## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

———————————————————————x
                                                    :

**STANLEY YEDLOWSKI, etc.,**           :    **Case No. 14-CV-8020-FLW-TJB**

                                                    :

                **Plaintiffs,**        :

**v.**                                              :

                                                    :

**ROKA BIOSCIENCE, INC.,** *et al.*,     :

                                                    :

                **Defendants**       :

———————————————————————x

**MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR (I) PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT (II) A PRELIMINARY DETERMINATION THAT CLASS CERTIFICATION FOR SETTLEMENT PURPOSES IS APPROPRIATE, AND (III) APPROVAL OF NOTICE AND NOTICE PLAN**

TABLE OF CONTENTS

I.     INTRODUCTION ........................................................................................... 1

II.    BACKGROUND ............................................................................................ 2

       A.     Summary of the claims ..................................................................... 2

       B.     Procedural history ............................................................................ 3

III.   THE COURT SHOULD PRELIMINARILY APPROVE THE SETTLEMENT .............. 4

       A.     Standards for Preliminary Approval ................................................ 4

       B.     That this settlement was negotiated at arm's length between experienced counsel
              supports preliminary approval. ........................................................ 5

       C.     No obvious deficiencies .................................................................... 6

       D.     Consideration of the *Girsh* factors show that this settlement falls within the range
              that the Court could approve ........................................................... 6

IV.    THE COURT SHOULD PRELIMINARY CERTIFY THE CLASS ................................ 9

       A.     Numerosity ...................................................................................... 10

       B.     Commonality ................................................................................... 11

       C.     Typicality ........................................................................................ 11

       D.     Adequacy ......................................................................................... 12

              (i)     Adequacy of the Proposed Class Representative ..................... 12

              (ii)    Rule 23(g) Adequacy of the Proposed Class Counsel ............. 12

       E.     Common Questions Predominate and the Class Is Superior to Other Methods of
              Adjudication .................................................................................... 13

V.     THE PROPOSED NOTICE TO CLASS MEMBERS SATISFIES RULE 23(C)(2)(B). 15

VI.    PROPOSED SCHEDULE OF EVENTS .............................................................. 17

VII.   CONCLUSION ............................................................................................ 18

Table of Authorities

**Cases**

*Alves v. Main*,
No. 01-789 DMC, 2012 WL 6043272 (D.N.J. Dec. 4, 2012)............................................. 7

*Amchem Products, Inc., v. Windsor*,
521 U.S. 591 (1997)......................................................................................... 12, 18

*Baby Neal v. Casey*,
43 F.3d 48 (3d Cir.1994)................................................................................................. 13

Curiale v. Lenox Grp., Inc.,
No. CIV A 07-1432, WL 4899474 (E.D. Pa. Nov.14, 2008) ........................................... 9

*Destefano v. Zynga, Inc.*,
No. 12-CV-04007-JSC, 2016 WL 537946 (N.D. Cal. Feb. 11, 2016) ............................ 11

*Ehrheart v. VerizonWireless*,
609 F.3d 590 (3dCir. 2010).................................................................................... 4, 5

*Eisen v. Carlisle & Jacqueline*,
417 U.S. 156 (1974)............................................................................................... 22

*Girsh v. Jepson*,
521 F.2d 153 (3d Cir. 1975)......................................................................................... 8, 9

*Good v. Nationwide Credit, Inc.*,
No. CV 14-4295, 2016 WL 929368 (E.D. Pa. Mar. 14, 2016)....................................... 19

*Hoxworth v. Blinder,Robinson & Co.*,
980 F.2d 912 (3d Cir.1992) ........................................................................................ 14

*In re CIGNA Corp.*,
No. CIV.A. 02-8088, 2007 WL 2071898 (E.D. Pa. July 13, 2007).................................. 7

*In re Corrugated Container Antitrust Litig.*,
643 F.2d 195 (5th Cir. 1981) ..................................................................................... 10

*In re DaimlerChrysler AG Sec. Litig.*,
216 F.R.D. 291 (D. Del. 2003) .................................................................................... 14

*In re General Motors Corp. Pick-Up Truck Fuel Tank Products Liability Litigation*,
55 F.3d 768 (3d Cir.1995 .......................................................................................... 5, 7

*In re Immune Response Sec. Litig.*,
497 F. Supp. 2d 1166 (S.D. Cal. 2007)....................................................................... 9

*In re Nat. Football League Players Concussion Injury Litig.*,
775 F.3d 570 (3d Cir. 2014)..................................................................................... 5, 12

*In re Nat'l Football League Players' Concussion Injury Litig.*,
301 F.R.D. 191 (E.D. Pa. 2014)................................................................................ 6, 7

*In re Schering-Plough Corp./ENHANCE Sec. Litig.*,
No. CIV.A. 8-397 DMC/JAD, 2012 WL 4482032 (D.N.J. Sept. 25, 2012).................... 14

*In re Warfarin Sodium Antitrust Litig.,*
    391 F.3d 516 (3d Cir. 2004) ........................................................................... 4

*Jones v. Commerce Bancorp, Inc.,*
    No. 05-5600 RBK, 2007 WL 2085357 (D.N.J. July 16, 2007) .................................. 6, 21

*Mehling v. New York Life Ins. Co.,*
    246 F.R.D. 467 (E.D. Pa. 2007) ....................................................................... 7

*Mullane v. Central Hanover Bank & Trust Co.,*
    339 U.S. 306 (1950) ....................................................................................... 22

*Nafar v. Hollywood Tanning Sys., Inc.,*
    No. 06-CV-3826 DMC, 2008 WL 3821776 (D.N.J. Aug. 12, 2008) ............................ 16

*Newton v. MerrillLynch, Pierce, Fenner & Smith, Inc,*
    259 F.3d 154 (3d Cir. 2001) ............................................................................ 14

*Phillips Petroleum Co. v. Shutts,*
    472 U.S. 797 (1985) ....................................................................................... 19

*Similow v. S.W. Bell Mobile Sys. Inc.,*
    323 F.3d 32 (1st Cir. 2003) ......................................................................... 17, 19

*Singleton v. First Student Mgmt. LLC,*
    No. CIV.A. 13-1744 JEI, 2014 WL 3865853 (D.N.J. Aug. 6, 2014) ........................... 6, 8

*Stewart v. Abraham,*
    275 F.3d 220 (3d Cir. 2001) ............................................................................ 13

*Vinh Nguyen v. Radient Pharm. Corp.,*
    No. SACV 11-00406 DOC, 2014 WL 1802293 (C.D. Cal. May 6, 2014) ...................... 16

*Weisfeld v. Sun Chem. Corp.,*
    210 F.R.D. 136 (D.N.J. 2002) .......................................................................... 17

**Statutes**

15 U.S.C. § 78u- 4(a)(7) ............................................................................... 16, 17

**Other Authorities**

Fed. R. Civ. P. 23(a) ................................................................................... 10, 13

Fed. R. Civ. P. 23(a)(1) ..................................................................................... 10

Fed. R. Civ. P. 23(a)(2) ..................................................................................... 11

Fed. R. Civ. P. 23(a)(3) ..................................................................................... 11

Fed. R. Civ. P. 23(a)(4) ..................................................................................... 12

Fed. R. Civ. P. 23(b)(3) ............................................................................. 10, 13, 14

Fed. R. Civ. P. 23(b)(3)(D) ................................................................................. 14

Fed. R. Civ. P. 23(c)(2)(B) ................................................................................. 15

Fed. R. Civ. P. 23(e). ......................................................................................... 5

Fed. R. Civ. P. 23(g) ........................................................................................................ 12

**Rules**

7 Conte & Newberg,
*Newberg on Class Actions* (4th ed. 2002) .......................................................... 4

7A Wright, Miller & Kane
*Federal Practice and Procedure: Civil 2d*, (1986)........................................... 14

Manual for Complex Litigation
(3rd ed. 1995).......................................................................................................... 5

Manual for Complex Litigation,
(4th ed. 2004)........................................................................................................ 5

Newberg on Class Actions,
(5th ed.)................................................................................................................ 6

iv

Lead Plaintiff Stanley Yedlowski ("Lead Plaintiff") respectfully submits this memorandum of law in support of his Motion for (I) Preliminary Approval Of Class Action Settlement (II) A Preliminary Determination That Class Certification For Settlement Purposes Is Appropriate, and (III) Approval Of Notice filed with the Court herewith.[1] Plaintiff also requests that the Court schedule a final approval hearing (the "Fairness Hearing"), where it will rule on the request for final approval of the proposed Settlement, the Plan of Allocation of Settlement proceeds, and the request for attorneys' fee and reimbursement of expenses.

## I.    INTRODUCTION

Lead Plaintiff proposes to settle the claims asserted in the Action against Defendants Roka BioScience, Inc. ("Roka"), Stephen T. Sobieski, and Paul G. Thomas (collectively, the "Defendants") for $3,275,000. By this motion, Lead Plaintiff only seeks preliminary approval of the Settlement. The Court does not need to determine whether it should approve the Settlement. Rather, it need only determine whether the Settlement is ***approvable***, in that it falls within the range that the Court reasonably could approve. If the Court grants preliminary approval, Lead Plaintiff will provide notice to the Class in a form and manner approved by the Court, soliciting claims for, objections to, and exclusions from the Settlement. With the Class Members' reactions in hand, the Court will determine whether to finally approve the Settlement.

This Settlement is an excellent result for the Class given that it recovers approximately 10.5% of the Class's maximum possible damages, which in the best case scenario (assuming Lead Plaintiff prevailed on all his claims) Lead Counsel estimated to be at most $30.9 million. This is an especially good result given the numerous obstacles to recovery in this case.

_____

[1] Unless otherwise defined herein, all capitalized terms herein take the meanings provided in the Stipulation of Settlement dated May 17, 2016 (the "Settlement Agreement"), which is being filed concurrently herewith.

The Court must also preliminarily certify a Settlement Class to allow for notice. Certification of a Settlement Class is nearly automatic in securities class actions, and this case is no different. The Court should make a preliminary determination that class treatment is appropriate, which will allow for notice to the Settlement Class.  The Court will not be bound by its preliminary determination when it has to decide whether to finally certify a settlement class.

Finally, the Court must approve both how notice of the settlement will be communicated to the class (the "Notice Plan") and the specific documents that Lead Plaintiff will use to communicate notice – the Notice of: (1) Pendency And Proposed Settlement of Class Action And (2) Hearing on Proposed Settlement (the "Individual Notice"), and the Summary Notice of: (1) Pendency And Proposed Settlement of Class Action And (2) Hearing on Proposed Settlement (the "Summary Notice"). Proposed versions are attached as exhibits D and F, respectively, to the Settlement Agreement. Because the Notice Plan, the Individual Notice, and the Summary Notice, all closely follow what is routinely used to communicate notice in securities class actions, the Court should approve them.

## II.     BACKGROUND

### A.     Summary of the claims

This is a securities class action brought on behalf of investors who bought Roka common stock in, or pursuant or traceable to, Roka's July 17, 2014 Initial Public Offering ("IPO"), including persons who bought Roka common stock between July 17, 2014, and March 26, 2015. ¶1. Roka sells tests to detect foodborne pathogens, to large-scale food testers such as meat manufacturers and commercial labs. Shortly before the IPO, Roka discovered that with some customers, its test to detect *Listeria* (a foodborne pathogen) generated unacceptable levels of false

positives. ¶¶9, 11.[2] Though Roka's IPO registration statement (the "IPO Registration Statement") disclosed that Roka's *Listeria* test generated sporadic false positives, it represented that Roka had developed a fix for the test. ¶139. But Lead Plaintiff alleges that by the time of the IPO, Defendants already knew, but did not disclose, that (a) Roka's fix of the *Listeria* false positives problem had already failed, and (b) Roka had already begun to lose customers because of the *Listeria* false positives problem. ¶¶97-104.

In a November 6, 2014 conference call and press release, Roka announced that the *Listeria* false positives problem had caused its revenue growth to stall. ¶¶114-15. Lead Plaintiff alleges that because of Roka's precarious financial condition, the stall dramatically increased the chance that Roka would ultimately fail. ¶¶66-68. The truth concealed from the IPO Registration Statement was not completely disclosed to the market on November 6 because of Defendants' false reassurances on the call. ¶121. Rather, the market only learned the scope of the false positives problem when, on March 26, 2015, following another quarter of zero sales growth, Roka announced that its sales would not increase substantially until Roka replaced the *Listeria* tests. ¶126.

### B.    Procedural history

This Action was filed on December 24, 2014. Dkt. # 1. In April 2015, the Court appointed Mr. Yedlowski as Lead Plaintiff and The Rosen Law Firm as Lead Counsel (Dkt. #19). Lead Plaintiff and named plaintiff Pratik Pitroda ("Plaintiffs") timely filed their Complaint alleging violations of Section 10(b) of the Securities and Exchange Act of 1934 (the "Exchange Act") against defendants Roka, Thomas, and Sobieski. Dkt. #23.

---

[2] Citations to "¶__" are to Paragraphs of the Amended Class Action Complaint for Violations of the Federal Securities Laws (the "Complaint"), Dkt. # 23.

In July 2015, Defendants filed a letter motion seeking to have the Court strike, discount, or otherwise limit consideration of facts the Amended Complaint attributed to confidential witnesses. Dkt. # 26. After considering Defendants' letter, Plaintiffs' response (Dkts. # 27-28), and Defendants' reply (Dkt. # 34), the Court declined to award any of the relief sought in Defendants' letter motion.

In September 2015, Defendants filed a motion to dismiss the Amended Complaint. Dkt. # 35. A month later, Lead Plaintiff filed his opposition. Dkt. # 38. The Court then stayed further briefing on Defendants' motion to dismiss while the Parties explored settlement discussions. Dkt. # 42.

To facilitate settlement discussions, the Settling Parties retained a mediator, the Hon. Faith S. Hochberg, U.S.D.J. (Ret.). The Settling Parties held an all-day mediation before Judge Hochberg on December 15, 2015. Defendant's insurer also attended the mediation. There, the Parties signed a settlement term sheet, whose principal term was that the Action would be dismissed for a cash payment of $3,275,000. The Parties then negotiated and drafted the Settlement Agreement.

## III.    THE COURT SHOULD PRELIMINARILY APPROVE THE SETTLEMENT

### A.    Standards for Preliminary Approval

This circuit has a "strong judicial policy in favor of class action settlement." *Ehrheart v. Verizon Wireless,* 609 F.3d 590, 595 (3d Cir. 2010); *see also In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 535 (3d Cir. 2004). "Settlement agreements are to be encouraged because they promote the amicable resolution of disputes and lighten the increasing load of litigation faced by the federal courts." *Ehrheart,* 609 F.3d at 594. This is particularly true for class actions of complex litigation and securities matters. 7 Conte & Newberg, *Newberg on Class Actions* §22.91 at 386-387 (4th ed. 2002) ("Securities suits readily lend themselves to compromise, because of the notable

4

unpredictability of result and the potential for litigation spanning up to a decade or more" (citations omitted)); *In re General Motors Corp. Pick-Up Truck Fuel Tank Products Liability Litigation,* 55 F.3d 768, 784 (3d Cir.1995) ("The law favors settlement, particularly in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation.")

Because this is a class action, any settlement requires the Court's approval. Fed. R. Civ. Proc. 23(e). Courts usually conduct a preliminary assessment of the settlement before directing notice, a practice recently endorsed by the Third Circuit. *In re Nat. Football League Players Concussion Injury Litig.*, 775 F.3d 570, 583, 584 (3d Cir. 2014) (*citing* Manual for Complex Litigation § 21.632 (4th ed. 2004) ("*National Football II*"). "Preliminary approval is not binding, and it is granted unless a proposed settlement is obviously deficient." *Jones v. Commerce Bancorp, Inc.*, No. 05-5600 RBK, 2007 WL 2085357, at *2 (D.N.J. July 16, 2007); *Singleton v. First Student Mgmt. LLC*, No.CIV.A. 13-1744 JEI, 2014 WL 3865853, at *5 (D.N.J. Aug. 6, 2014) (preliminary approval "is not binding and may be conducted informally.") An initial presumption of fairness applies if the proposed settlement was reached through arm's length negotiation. *Jones*, 2007 WL 2085357, at *2 *quoting* Manual for Complex Litigation, § 30.42 (3rd ed. 1995); *In re Nat'l Football League Players' Concussion Injury Litig.*, 301 F.R.D. 191, 198 (E.D. Pa. 2014) ("*National Football I*").

**B.    That this settlement was negotiated at arm's length between experienced counsel supports preliminary approval.**

Settlement discussions began after briefing on Defendants' Motion to Dismiss was nearly completed. The Settlement of $3,275,000 was agreed upon after arms' length negotiations between counsel during a full-day formal mediation session presided over by Judge Hochberg, a retired judge of this Court. "The participation of an independent mediator in settlement negotiations

virtually insures that the negotiations were conducted at arm's-length and without collusion between the parties." *Alves v. Main*, No. 01-789 DMC, 2012 WL 6043272, at *22 (D.N.J. Dec. 4, 2012) (internal quotation omitted); *In re CIGNA Corp.*, No. CIV.A. 02-8088, 2007 WL 2071898, at *3 (E.D. Pa. July 13, 2007) (similar); *National Football I*, 301 F.R.D. 191, 198 (E.D. Pa. 2014). Though professional, negotiations at the mediation were adversarial and zealous.

And Lead Counsel is highly experienced in securities class actions, further supporting settlement. *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Products Liab. Litig.*, 55 F.3d 768, 796 (3d Cir. 1995) (presumption of fairness when settlement negotiations conducted at arm's length by experienced counsel).

### C.     No obvious deficiencies

"Obvious deficiencies" means things like "unduly preferential treatment of class representatives or segments of the class, or excessive compensation of attorneys" *Mehling v. New York Life Ins. Co.*, 246 F.R.D. 467, 472 (E.D. Pa. 2007). Here, any differences in treatment between different class members are justified by the varying strengths of class members' claims. And while Lead Plaintiff will seek an incentive award "the class representative and class member are not similarly situated in regard to the single piece of differential recovery, the incentive payment: the class representative did extra work and took extra risk to earn that." Newberg on Class Actions § 13:59 (5th ed.)

### D.     Consideration of the *Girsh* factors show that this settlement falls within the range that the Court could approve.

In determining whether to finally approve class action settlements, courts in the Third Circuit consider the *Girsh* factors: "(1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) stage of the proceedings and the amount of discovery completed; (4) risks of establishing liability; (5) risks of establishing damages; (6)

risks of maintaining the class action through the trial; (7) ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation." *Singleton*, 2014 WL 3865853, at *5 (*citing Girsh v. Jepson*, 521 F.2d 153 (3d Cir. 1975)). The *Girsh* final approval factors guide courts' preliminary assessments of class action settlements. *Singleton*, 2014 WL 3865853, at *5. However, at the preliminary approval stage the Court need not address all of the *Girsh* factors. *Curiale v. Lenox Grp., Inc.*, No. CIV A 07-1432, 2008 WL 4899474, at *9 n. 4 (E.D. Pa. Nov.14, 2008) ("At the preliminary approval stage, however, we need not address all of [the *Girsh*] factors, as 'the standard for preliminary approval is far less demanding.'") (citation omitted).

The first factor supports approval. "Large class actions alleging securities fraud" are "inherently complex."*In re Ikon Office Solutions, Inc., Sec. Litig.*, 194 F.R.D. 166, 179 (E.D. Pa. 2000). This case is no exception, involving a complex technological product, a tight, heavily-disputed sequence of events occurring around Roka's IPO, and complex damages calculations.

The third factor supports approval.[3] Though discovery has been stayed by the PSLRA, Lead Plaintiff conducted an extensive pre-discovery investigation which included detailed interviews with two former employees. Lead Plaintiff also consulted a financial expert to determine potential damages and a biotechnology expert to better understand how the facts reported by the former witnesses connected with potential deficiencies in the *Listeria* test. Thus, Lead Plaintiff had a clear understanding of the strengths and weaknesses of his case. *In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1174 (S.D. Cal. 2007) (investigation provided

---

[3] Before notice, it is not possible to gauge the reaction of the class. Therefore discussion of the second *Girsh* factor is premature. The Lead Plaintiff, however, enthusiastically supports the Settlement.

sufficient understanding of merits even though PSLRA had prevented discovery from ever taking place); *see also In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 211 (5th Cir. 1981) ("formal discovery [is not] a necessary ticket to the bargaining table."). Defendants also provided additional non-public documents to assist Plaintiffs in assessing the strengths and weaknesses of their claims in the Mediation. Further, as part of the Settlement Agreement, Defendants will produce documents and offer its officers and employees for interviews. Settlement Agreement, I.C.2. Should Lead Plaintiff turn up information showing that the Settlement is not fair, reasonable, and adequate, he may terminate the Settlement. Settlement Agreement, XIV.A.

The fourth, fifth, sixth, and seventh factors all support approval. While Lead Plaintiff is confident he would have survived Defendants' Motion to Dismiss and then obtained evidence through discovery to support his claims, the case presents significant difficulties. First, Defendants indisputably disclosed some – but not, Lead Plaintiff alleges, all – of the *Listeria* false positives problem in the IPO Registration Statement. Second, and similarly, Defendants argue that their disclosures concerning the *Listeria* false positives problem immunize them from liability for the misleading omissions Lead Plaintiff alleges, under the PSLRA's safe harbor and the bespeaks caution doctrine. Third, Defendants have argued that they did not learn that Roka's proposed solution to the *Listeria* false positives problem had failed until after the IPO. Nor is this a case where further developments have eased the burden of pleading and proving a case. Defendants have not corrected the Registration Statement, and to Lead Plaintiff's knowledge, the SEC has not launched an investigation of potentially false statements in the Registration Statement.

The seventh, eighth, and ninth factors support approval. Roka has incurred consistent losses, with an accumulated deficit of $109.1 million by March 31, 2014. ¶66. The accumulated

deficit reached $177.9 million by March 31, 2016.[4] Yet Roka recently reported that it only had cash, cash equivalents, and short-term investments of $23.2 million as of March 31, 2016.[5] Indeed, as this brief is filed, Roka's market capitalization is about $10.5 million – down more than 95% since the IPO. By the time of trial, Roka may not have any money left to pay a settlement or judgment. And while Defendants are insured, their insurance policies are wasting, meaning that they decline dollar-for-dollar as they pay out Defendants' attorneys' fees. By the time of trial, Roka's insurance policies may long since have paid out their limits.

And the eighth and ninth factors support approval. Despite the substantial risks this Action presents, the Settlement recovers about 10.5% of maximum potential damages – well above the median recovery in securities class action settlements. *See Destefano v. Zynga, Inc.*, No. 12-CV-04007-JSC, 2016 WL 537946, at *11 (N.D. Cal. Feb. 11, 2016) (reporting that median recovery in securities class action settlements between 2013 and 2015 was 2.2%). Lead Plaintiff's maximum estimate of class damages (the Class wins on every point and the factfinder accepts the Class's damages model) is approximately $30.9 million. This assumes that a jury would credit Lead Plaintiff's evidence negating Defendants' argument that only a portion of the entire damages amount is attributable to Defendants' alleged misconduct.

## IV.    THE COURT SHOULD PRELIMINARY CERTIFY THE CLASS

In preliminarily approving a proposed settlement, this Court should preliminarily determine that class treatment is appropriate. *See Amchem Products, Inc., v. Windsor*, 521 U.S. 591, 620 (1997) (trial court may disregard litigation and trial management issues in certifying a settlement class, but the proposed class must still satisfy the other requirements of Rule 23). The

---

[4] Roka BioScience, Inc., Form 10-Q for the 3 months ended March 31, 2016, at 3, filed May 6, 2016.
[5] *Id.*

Court need not, at this point, conduct a rigorous analysis to determine whether to certify a settlement class, but should reserve this analysis for the Fairness Hearing. *National Football II*, 775 F.3d at 585. "Permitting a district court to manage a settlement class in this manner provides the flexibility needed to protect absent class members' interests and efficiently evaluate the issues of class certification and approval of a settlement agreement." *Id.*

Rule 23 of the Federal Rules of Civil Procedure governs class certification, and requires that (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims of defenses of the class; and (4) the representative parties will fairly and adequately protect the interest of the class. Fed. R. Civ. Proc. 23(a). In addition, an action may be maintained as a class action if the "court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. Proc. 23(b)(3). This action meets these requirements.

### A.     Numerosity

Rule 23(a)(1) requires a class be so large that joinder of all members is "impracticable." Numerosity is presumed "if the named plaintiff demonstrates that the potential number of plaintiffs exceeds 40." *Stewart v. Abraham*, 275 F.3d 220, 226-27 (3d Cir. 2001). Courts generally presume that the numerosity requirement has been satisfied "when a class action involves a nationally traded security." *In re Cigna Corp Sec. Litig.*, No. CIV.A. 02-8088, 2006 WL 2433779, at *2 (E.D. Pa. Aug. 18, 2006). Here, Roka's stock was listed on the NASDAQ, and more than 14 million of its shares were traded during the Class Period. Thus, numerosity is met.

### B.     Commonality

Rule 23(a)(2) requires that there be "questions of law or fact common to the class." Commonality does not mean that all class members must make identical claims and arguments, but only that "named plaintiffs share at least one question of fact or law with the grievances of the prospective class."*Baby Neal for and by Kanter v. Casey,* 43 F.3d 48, 56 (3d Cir.1994).

Courts will usually find commonality if the plaintiffs charge defendants with a common course of misconduct – particularly where, like here, the misrepresentations appeared in the Defendants' public statements that were disseminated to all investors. *In re DaimlerChrysler AG Sec. Litig.*, 216 F.R.D. 291, 296 (D. Del. 2003) (finding that "questions of misrepresentation, materiality and scienter [in securities fraud class actions] are the paradigmatic common question[s] of law or fact") (internal quotation omitted); *accord In re Schering-Plough Corp./ENHANCE Sec. Litig.*, No. CIV.A. 8-397 DMC/JAD, 2012 WL 4482032, at *4 (D.N.J. Sept. 25, 2012).

### C.     Typicality

Rule 23(a)(3) requires that the representative's claim be typical of those of the members of the class. "If the claims of the named plaintiffs and putative class members involve the same conduct by the defendant, typicality is established regardless of factual differences." *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 259 F.3d 154, 183-84 (3d Cir.2001). "Factual differences will not render a claim atypical if the claim arises from the same event or practice of course of conduct that gives rise to the claims of the class members, and it is based on the same legal theory." *Hoxworth v. Blinder, Robinson & Co.,* 980 F.2d 912, 923 (3d Cir.1992).

Here, Lead Plaintiff's claims are similar to those of the other members of the Class. As evidenced by his sworn Certification, Lead Plaintiff bought Roka stock during the Class Period. (Dkt. #3-5). Just like the other members of the proposed Class, Lead Plaintiff bought Roka stock in, or pursuant or traceable to, Roka's Registration Statement, which allegedly contained false

statements, and suffered damages when the false statements materialized. His claims stand or fall with those of the class. Accordingly, Lead Plaintiff's claims are typical.

### D.    Adequacy

Rule 23(a)(4) requires that the representative parties fairly and adequately protect the interests of the class. This requirement has traditionally entailed a two-pronged inquiry: *first*, the named plaintiff's interests must be sufficiently aligned with the interests of the absentees; and *second* the plaintiff's counsel must be qualified to represent the class. *General Motors*, 55F.3d at 800. A named plaintiff is "adequate" if his interests do not conflict with those of the Class. *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 312 (3d Cir. 1998). Pursuant to Rule 23(g), adequacy of class counsel is considered separately from the determination of the adequacy of the class representatives. Both prongs of the adequacy requirement are satisfied here.

#### (i)      Adequacy of the Proposed Class Representative

Lead Plaintiff has no interests that are antagonistic to those of the members of the proposed Class and has no unique defenses from the proposed Class. Lead Plaintiff purchased Roka stock traceable to the Registration Statement. Lead Plaintiff, on his own behalf and on behalf of all members, seeks to recover from Defendants damages caused by Defendants' alleged unlawful conduct. Lead Plaintiff's interests are congruent with and not antagonistic to other Class Members' interests.

#### (ii)     Rule 23(g) Adequacy of the Proposed Class Counsel

Rule 23(g) requires a court to assess the adequacy of proposed class counsel. To that end, the court must consider the following: (1) the work counsel has done in identifying or investigating potential claims in the action; (2) counsel's experience in handling class actions, other complex litigation, and claims of the type asserted in the action; (3) counsel's knowledge of the applicable

law; and (4) the resources counsel will commit to representing the class. *Nafar v. Hollywood Tanning Sys., Inc.,* No. 06-CV-3826 DMC, 2008 WL 3821776, at *7 (D.N.J. Aug. 12, 2008).

Lead Counsel has successfully prosecuted securities class actions in courts throughout the country. In this action, Lead Counsel has devoted considerable time in, *inter alia*, researching and filing the initial and amended complaints, responding to Defendants' motion to dismiss, and reaching and negotiating the specific terms of the Settlement Agreement. Lead Counsel should be appointed as counsel to the Settlement Class. *Vinh Nguyen v. Radient Pharm. Corp.*, No. SACV 11-00406 DOC, 2014 WL 1802293, at *9 (C.D. Cal. May 6, 2014) ("Plaintiff's counsel [The Rosen Law Firm] took on significant risk in this case, working thoroughly and enthusiastically through extensive litigation that required significant expert involvement.").

**E.     Common Questions Predominate and the Class Is Superior to Other Methods of Adjudication**

After meeting the threshold requirements of Rule 23(a), a plaintiff must establish that the proposed class meets the requirements of Rule 23(b)(3). To certify a class under Rule 23(b)(3), the Court must find that:

> [T]he questions of law or fact common to the members of the class predominate over any question affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

Here, Lead Plaintiff satisfies the predominance and superiority criteria of Rule 23(b)(3). "The focus of the predominance inquiry is on liability, not damages." *Smith,* 2007 WL1217980, at * 9 (citing cases).

When common questions are a significant aspect of a case and they can be resolved in a single action, class certification is appropriate. *See* 7A Wright, Miller & Kane, *Federal Practice and Procedure: Civil 2d*, § 1788, at 528 (1986). "Rule 23(b)(3) requires merely that common issues predominate, not that all issues be common to the class." *Similow v. S.W. Bell Mobile Sys.*

*Inc.*, 323 F.3d 32, 39 (1st Cir. 2003); *Weisfeld v. Sun Chem. Corp.,* 210 F.R.D. 136, 141 (D.N.J. 2002) (the mere existence of individual issues will not of itself defeat class certification.) Here, the existence of common questions and their predominance over individual issues are exemplified by the fact that if every class member were to bring an individual action, each plaintiff would be required to demonstrate the same omissions or misrepresentations to prove liability. Thus, this case is an example of the principle that the predominance requirement is "readily met" in many securities class actions. *Amchem*, 521 U.S. at 625.

Factors relevant to a finding of superiority include:

(a)   the interest of members of the class in individually controlling the prosecution or defense of separate actions;

(b)   the extent and nature of any litigation concerning the controversy already commenced by or against the members of the class;

(c)   the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

(d)   the difficulties likely to be encountered in the management of a class action.

 Fed. R. Civ. P. 23(b)(3).

Many, if not most, of the Class members are individuals for whom prosecution of a costly damages action on their own behalf is not a realistic or efficient alternative. The District of New Jersey is an appropriate forum because all Defendants reside here. As to Rule 23(b)(3)(D), there will be  no difficulties in managing this Settlement Class.

This Court should balance the fairness and efficiency of certifying a class against other possible methods of adjudication. Without a class action, investors who have been defrauded by securities law violations but whose losses do not run into several million dollars would likely have no practical recourse. *See Phillips Petroleum Co. v. Shutts,* 472 U.S. 797, 809 (1985) ("[m]ost of the plaintiffs would have no realistic day in court if a class action were not available.") "[C]lass actions

are favored in the securities litigation context because they are necessary to meaningfully enforce the securities laws." *Smith*, 2007 WL 1217980, at * 10.  And if individuals *do* have the means to litigate their own action, absent a class action, this Court might have to try numerous lawsuits. *Good v. Nationwide Credit, Inc.*, No. CV 14-4295, 2016 WL 929368, at *8 (E.D. Pa. Mar. 14, 2016); *see also Smilow*, 323 F.3d at 41 ("The core purpose of Rule 23(b)(3) is to vindicate the claims of … groups of people whose individual claims would be too small to warrant litigation").

Thus, a class action is the superior method of adjudication and satisfies Rule 23(b)(3). Solely for the purposes of settlement, Defendants do not dispute that the Class should be certified in accordance with Rule 23(b)(3). The Court should make a preliminary determination that class treatment is appropriate to permit notice to the Class.

## V.     THE PROPOSED NOTICE TO CLASS MEMBERS SATISFIES RULE 23(C)(2)(B).

The Proposed Order Preliminarily Approving Settlement and Providing for Notice ("Preliminary Approval Order"), which is attached as Exhibit A to the Settlement Agreement, mandates that within sixteen (16) business days of the Court's order preliminarily approving the Settlement, Lead Counsel shall provide notice to Class Members through mailing of the proposed Individual Notice to all identifiable Class members, substantially in the form annexed as Exhibit D to the Settlement Agreement, together with a copy of the Claim Form and Release, substantially in the form annexed as Exhibit F to the Settlement Agreement, to be promptly mailed by first-class mail to each such Class Member whose name and address are provided by any nominee.

The Individual Notice closely tracks a model notice published by the Federal Judicial Center. *Compare* Exh. D *with* Federal Judicial Center Model Securities class action certificate and settlement: full notice.[6] The Individual Notice provides detailed information concerning: (a) the

---

[6] Go to www.fjc.gov, select "Class Action Notices Page" from the left-hand column, and select Securities class action certificate and settlement: full notice.

15

rights of Class Members, including the manner in which objections can be lodged; (b) the nature, history, and progress of the litigation; (c) the proposed Settlement; (d) the process for filing a proof of claim; (e) a description of the Plan of Allocation; (f) the maximum fees and expenses to be sought by Lead Counsel; and (g) ways for any Class Member to get more information about the case. Individual Notice, at 1-2, 9-10. The proposed Individual Notice also informs Class Members how to object or exclude themselves from the Settlement, and clearly states that all those who remain in the Class are bound by the terms of the Settlement and all past, present, and future orders and judgments in this Action. Individual Notice, at 8-10. The Individual Notice also sets forth instructions to securities brokers and other nominee holders for forwarding the Notice to those persons for whom the nominees held shares in street name. Individual Notice, at 10. Further, the Individual Notice states the amount of the Settlement on both an aggregate and average per share basis; provides a brief statement explaining the reasons why the Settling Parties are proposing the Settlement; and states the maximum amount of attorneys' fees and litigation expenses (both on an aggregate and average per share basis) that Lead Counsel will seek; and provides the names, addresses, and telephone numbers of representatives of the Claims Administrator and Lead Counsel who will be available to answer questions from Class Members, as required by 15 U.S.C. § 78u- 4(a)(7). Individual Notice, at 1-2.

The Preliminary Approval Order also provides that within ten (10) days after the mailing of the Mailing Notice, Lead Counsel will also cause a Summary Notice, substantially in the form annexed as Exhibit F to the Settlement Agreement to be published electronically once on *GlobeNewswire*, and in print in each of *The Wall Street Journal* and *Investor's Business Daily*.

The form and manner of providing notice to the Class satisfy the requirements of due process, Rule 23, and the PSLRA (15 U.S.C. § 78u-4(a)(7). *In re Ikon Office Sols., Inc., Sec. Litig.*,

194 F.R.D. 166, 175 (E.D. Pa. 2000) (approving notice plan calling for mailing of notice to individual class members and publication of summary notice in the Wall Street Journal); *Jones*, 2007 WL 2085357, at *5 ("the proposed distribution of notice to class members by first class mail is reasonable because no alternative method of distribution is more likely to notify class members.").

The Individual Notice and Summary Notice "provided all of the required information concerning the class members' rights and obligations under the settlement." *In re Prudential Ins.*, 148 F.3d at 328. The manner of providing notice, which includes individual notice by mail to all Class Members who can be reasonably identified, represents the best notice practicable under the circumstances and satisfies the requirements of due process and Rule 23. The Individual Notice, Summary Notice, and Notice Plan are thus "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). And the proposed method of notice described above satisfies due process. *See Eisen v. Carlisle & Jacqueline*, 417 U.S. 156, 173 (1974).

## VI.   PROPOSED SCHEDULE OF EVENTS

Lead Plaintiff proposes the following schedule of events leading to the Fairness Hearing as set forth in the Preliminary Approval Order filed herewith:

| Event | Deadline for Compliance |
|---|---|
| Date for Fairness Hearing. | At least 130 days after the Court preliminarily approves the settlement |
| Mailing of Notice and Proof of Claim and Release. | No later than 16 business days after the entry of Preliminary Approval Order. (Preliminary Approval Order ¶ 11) (the "Notice Date") |
| Publication of Summary Notice. | No later than 10 days after the Notice Date. (Preliminary Approval Order ¶ 12) |

17

| Deadline for filing Proofs of Claim. | No later than 80 calendar days after the Court preliminarily approves the Settlement. (Preliminary Approval Order ¶ 19a.) |
|---|---|
| Filing deadline for requests for exclusion. | Postmarked no later than 40 calendar days prior to the Fairness Hearing. (Preliminary Approval Order ¶ 22) |
| Date for Plaintiffs to file and serve papers in support of the Settlement, the Plan of Allocation and for application for attorneys' fees and reimbursement of expenses. | 35 calendar days prior to the Fairness Hearing. (Preliminary Approval Order ¶ 34 a.) |
| Filing deadline for objections. | 20 calendar days prior to the Fairness Hearing. (Preliminary Approval Order ¶ 27) |
| Date for Plaintiffs to file reply papers in support of the Settlement, the Plan of Allocation and for application for attorneys' fees and reimbursement of expenses. | 7 calendar days prior to the Fairness Hearing. (Preliminary Approval Order ¶ 34 c.) |

The Court should schedule the Fairness Hearing for a date at least 130 calendar days after entering the Preliminary Approval Order, which will allow enough time for (i) Lead Counsel to mail the Notice, and publish the Summary Notice, (ii) conduct confirmatory discovery, (iii) file the motion in support of final approval of the Settlement Agreement and the Plan of Allocation and for application for attorneys' fees and reimbursement of expenses; allow enough time for necessary notice under the Class Action Fairness Act; allow enough time for making objections, and for the reply in support of final approval; and will allow Class Members enough time to submit their proof of claim or exclude themselves from the Settlement.

## VII.   CONCLUSION

Today, the Court need not determine whether the Settlement is fair, reasonable, and adequate, and whether class treatment is appropriate. That determination is for Fairness Hearing. Rather, this motion asks the Court to put the settlement process in motion.

This Settlement results from hard-fought litigation and arm's-length negotiation.  It falls within the range of possible approval and returns to the class a percentage of damages in line with

other securities class action settlements. The Court should grant it preliminary approval. The Court should also make a preliminary determination that class treatment is appropriate, approve the form and manner of notice, and set a date for the Fairness Hearing.

Dated: May 20, 2016                                     Respectfully submitted,

                                                        **THE ROSEN LAW FIRM, P.A.**

                                                        /s/ Laurence M. Rosen
                                                        Laurence M. Rosen LR-5733
                                                        609 W. South Orange Avenue, Suite 2P
                                                        South Orange, NJ 07079
                                                        Telephone: (973) 313-1887
                                                        Fax: (973) 833-0399
                                                        lrosen@rosenlegal.com

                                                        Lead Counsel for Plaintiffs

**CERTIFICATE OF SERVICE**

I, Laurence M. Rosen, hereby certify that on May 20, 2016, I filed a copy of the foregoing

document via CM/ECF, which sent notification of such filing to all counsel of record.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: May 20, 2016                                   /s/ Laurence M. Rosen

                                                      Laurence M. Rosen