## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

—————————————————————x

STANLEY YEDLOWSKI, etc.,                   :       Case No. 14-CV-8020-FLW-TJB
                                           :
              Plaintiffs,                  :
                                           :
v.                                         :
                                           :
ROKA BIOSCIENCE, INC., *et al.*,           :
                                           :
              Defendants                   :
—————————————————————x

### STIPULATION OF SETTLEMENT

WHEREAS, on December 24, 2014, this securities class action was filed against

Defendants Roka Bioscience, Inc. ("Roka"), Steven T. Sobieski, and Paul G. Thomas

(collectively, the "Defendants"), on behalf of persons who purchased stock in or traceable to

Roka's initial public offering, which became effective on July 17, 2014 (the "IPO"), alleging

violations of the Securities Act of 1933 (the "Securities Act"); and

WHEREAS, on February 23, 2015, Stanley Yedlowski ("Lead Plaintiff") filed his

unopposed motion (the "Lead Plaintiff Motion") for appointment of himself as lead plaintiff and

his counsel The Rosen Law Firm, P.A. as lead counsel ("Lead Counsel") (dkt. # 3); and

WHEREAS, on April 21, 2015, the Court granted the Lead Plaintiff Motion (dkt. # 19);

and

WHEREAS, after a thorough investigation, on June 23, 2015, Lead Plaintiff and Pratik

Pitroda ("Plaintiffs") filed their Amended Class Action Complaint for Violations of the Federal

Securities Laws (dkt. # 23) (the "Complaint") against Defendants, on behalf of a class consisting

of all persons and entities who had purchased or otherwise acquired Roka securities pursuant or

traceable to the Company's Registration Statement issued in connection with the Company's

IPO, dated July 17, 2014, including those who had purchased or otherwise acquired Roka common stock between July 17, 2014 and March 26, 2015, inclusive (the "Class Period"); and

WHEREAS, on August 25, 2015, Defendants filed their Motion to Dismiss Plaintiffs' Amended Class Action Complaint (dkt. # 35) (the "Motion to Dismiss"), and, on October 9, 2015, Plaintiffs filed their Memorandum of Law in Opposition to the Motion to Dismiss (the "Opposition"); and

WHEREAS, after Plaintiffs filed the Opposition, the parties began settlement discussions; and

WHEREAS, pursuant to the Parties' stipulation, the Court stayed briefing on the Motion to Dismiss so that the Parties could attend a mediation session on December 15, 2015, before The Hon. Faith S. Hochberg, U.S.D.J. (Ret.) (dkt. # 42) (the "Mediation"); the Court's order granted Defendants until February 1, 2016 to file their Reply in further support of the Motion to Dismiss, and administratively terminated the Motion to Dismiss, subject to reinstatement if the Mediation proved to be unsuccessful; and

WHEREAS, in preparation for and at the Mediation, the parties exchanged and reviewed substantial new non-public information relevant to Plaintiffs' claims and Defendants' defenses; and

WHEREAS, at the Mediation, Plaintiffs' and Defendants' counsel reached an agreement in principle to recommend to their respective clients a proposed settlement of the Action (the "Settlement"), subject to approval by the clients, execution of a formal settlement agreement, and approval by the Court pursuant to Rule 23(e) of the Federal Rules of Civil Procedure and section 27 of the Securities Act; and

WHEREAS, subject to confirmatory discovery as further described below, and based upon Lead Plaintiff's and Lead Counsel's current belief that the terms of this Settlement Agreement are fair, reasonable, and adequate, Lead Counsel and Defendants' Counsel prepared the settlement documents and executed this Settlement Agreement; and

WHEREAS, throughout the pendency of the Action and the settlement negotiations, Plaintiffs and Defendants have been advised by various consultants and experts, including individuals with expertise in estimating potential damages in cases involving allegations of securities-law violations, and by counsel competent in securities lawsuits such as this Action; and

WHEREAS, based Lead Counsel's investigation and evaluation of the facts and law relating to the claims alleged in this Action, Lead Counsel's pre- and post-filing investigations, Lead Counsel's consultation with experts, and the confirmatory discovery that will be conducted, Plaintiffs and Lead Counsel have agreed to settle the Action pursuant to the terms of this Settlement Agreement after considering, among other things: (*i*) the substantial benefits that the terms of the proposed Settlement would provide to Class Members; (*ii*) the attendant risks of litigation, especially in complex actions such as this one, the defenses available to defendants, and the difficulties and delays inherent in such litigation; (*iii*) the desirability of consummating this Settlement Agreement promptly to provide effective relief to Class Members; and (*iv*) Plaintiffs' and Lead Counsel's current belief, to be verified through the confirmatory discovery that they will conduct, that the proposed Settlement is fair, reasonable, and adequate and in the best interests of Class Members; and

WHEREAS Defendants expressly deny the wrongdoing alleged in this Action and do not concede any wrongdoing or liability in connection with any facts or Claims that have been or could have been alleged in the Action, but nevertheless consider it desirable for the Action to be settled and dismissed because the proposed Settlement would, among other things:  (*i*) bring to an end the substantial expense, burdens, and uncertainties associated with continued litigation of the Claims asserted in this Action; (*ii*) finally put to rest those Claims and the underlying matters; and (*iii*) confer substantial benefits upon Roka, including the avoidance of further disruption of the management and operation of Roka's business due to the pendency and defense of the Action; and

WHEREAS this Settlement Agreement, the offer of this Settlement Agreement, and compliance with this Settlement Agreement shall not constitute or be construed to be an admission by Defendants or the other Releasees, or any of them individually, of any wrongdoing or liability; and

WHEREAS, except as otherwise provided in this Settlement Agreement, this Agreement shall not be admissible in any judicial, administrative, or other proceeding or cause of action as an admission of liability or for any purpose other than to enforce the terms of this Settlement;

NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED, by and among the undersigned, including Plaintiffs (individually and in their representative capacity) and Defendants, by and through their duly authorized counsel, that the Action and the matters raised by it are hereby settled and compromised as to Defendants, that the Action will be dismissed on the merits and with prejudice as to Defendants, that the Released Plaintiffs' Claims will be released as to the Releasees, and that the Released Defendants' Claims will be released as to the

Releasors based upon the terms and conditions set forth in this Settlement Agreement (including the Release), subject to the Court's approval and its becoming Final.

## I.   DEFINITIONS AND CONFIRMATORY DISCOVERY

### A.   Definitions

As used in this Settlement Agreement, the following terms have the meanings set forth herein:

1.   "Action" means the putative securities class action originally filed as *Wei Ding, etc. v. Roka Bioscience, et al.*, and currently pending in the Court under the caption *Stanley Yedlowski, etc. v. Roka Bioscience, et al.,* No. 14-cv-8020-FLW-TJB, including any other cases that might be consolidated into that action as of the Final Settlement Date.

2.   "Affiliate" or "Affiliated" means such persons or entities as are defined in 17 C.F.R. Part 210.1-02(b).

3.   "Attorneys' Fees and Expenses Application" means the motion for fees and expenses to be made by Lead Counsel pursuant to Section IX below.

4.   "Attorneys' Fees and Expenses Award" means the amount(s) that the Court awards to Lead Counsel to compensate it for its fees and expenses in connection with investigating, prosecuting, and/or settling the Action, as provided for in Section IX below.

5.   "Authorized Claimant" means a Class Member (or the representative of such Class Member, including agents, administrators, executors, heirs, predecessors, successors, Affiliates, or assigns) whose claim for recovery from the settlement fund has been allowed pursuant to the terms of the Settlement Agreement.

6.   "Claim" or "Claims" means any and all actions, causes of action, proceedings, adjustments, executions, offsets, judgments, obligations, suits, debts, dues, sums of

money, accounts, reckonings, bonds, bills, specialties, variances, covenants, trespasses, damages, demands (whether written or oral), liabilities, controversies, costs, expenses, attorneys' fees, and losses whatsoever, whether in law, in admiralty, or in equity, and whether based on any U.S. federal or state or foreign statutory or common-law right of action or otherwise, foreseen or unforeseen, matured or unmatured, known or unknown, accrued or not accrued, existing now or to be created in the future, including Unknown Claims.

7. "Claim Form" means the claim form, as approved by the Court, that will be provided to potential Class Members and pursuant to which such Class Members may submit claims under the procedures set out in this Settlement Agreement. The Claim Form shall be substantially in the form set out as Exhibit E.

8. "Claims Administrator" means, subject to Court approval, the third-party agent or administrator that the Court shall appoint in the Preliminary Approval Order to provide notice to potential Class Members, respond to inquiries from potential Class Members, process, review, and make recommendations on approvals of Proof of Claim and Release Forms, administer and distribute the Net Settlement Amount in accordance with the terms of this Settlement Agreement, and otherwise administer the terms of this Settlement Agreement. Plaintiffs shall select the Claims Administrator, subject to Court approval and to Defendants' consent, which shall not be unreasonably withheld.

9. "Class" or "Class Members" means, for purposes of this Settlement, all persons, entities, or legal beneficiaries or participants in any entities who purchased or otherwise acquired Roka securities pursuant or traceable to the Registration Statement issued in connection with Roka's IPO dated July 17, 2014, including those persons or entities who purchased or

otherwise acquired Roka common stock between July 17, 2014 and March 26, 2015, inclusive (each member of the Class to be referred to as a "Class Member").  Excluded from the Class are:

a.       such persons or entities who submit valid and timely requests for exclusion from the Class;

b.       such persons or entities who, while represented by counsel, settled an actual or threatened lawsuit or other proceeding against the Releasees and released the Releasees from any further Claims concerning their purchase or other acquisition of Roka securities during the Class Period;

c.       such persons or entities who are or were:  Defendants; officers or directors of Roka between July 17, 2014 and the end of the Class Period; Family Members of any of the foregoing, and their legal representatives, heirs, successors, or assigns; and any entity in which any Defendant has or had a Controlling Interest.

10.     "Class Period" means the period of time from July 17, 2014 through March 26, 2015, inclusive.

11.     "Complaint" means the Amended Class Action Complaint filed in the Action on June 23, 2015.

12.     "Complete Bar Order" means the bar order, the text of which is set forth in Subsection XI.C below.

13.     "Confidentiality Order" means the Stipulation and Agreed Confidentiality Order in the form attached as Exhibit G, to be entered into by Lead Plaintiff and Roka and approved by the Court.

14.     "Controlling Interest" means an interest in an entity where such interest is sufficient to allow the interest holder directly or indirectly to direct or cause the direction of the

management and policies of the entity, whether through the ownership of voting shares, by contract, or otherwise.  Any disputes as to whether a Releasee has a Controlling Interest in an entity or whether an entity has a Controlling Interest in a Releasee shall, solely for purposes of determining whether a Controlling Interest exists under this Settlement Agreement, be submitted to the Court for resolution, and the Releasee shall, as the case may be, bear the burden of proof as to whether or not the interest is or was a Controlling Interest for purposes of this Settlement Agreement.

15.     "Court" means the Court in which this Action is pending.

16.     "Defendants" means Roka Bioscience, Inc., Paul G. Thomas, and Steven T. Sobieski.

17.     "Defendants' Counsel" means Proskauer Rose LLP.

18.     "Escrow Account" means the account described in Section II into which the Settlement Amount shall be paid, which account shall be treated for tax purposes as a Qualified Settlement Fund, as defined below.

19.     "Escrow Agent" means the individual or entity acting as escrow agent for the Escrow Account.  The Escrow Agent shall be selected by Defendants upon approval by Lead Counsel, which approval shall not be unreasonably withheld.  Defendants, after consultation with Lead Counsel, have selected The Rosen Law Firm, P.A. as Escrow Agent for the Settlement, subject to the terms of this Settlement Agreement, and Lead Counsel has approved the selection.

20.     "Exchange Act" means the Securities Exchange Act of 1934, as amended.

21.     "Execution Date" means the date by which this Settlement Agreement has been executed by all Settling Parties.

22. "Fairness Hearing" means the hearing at or after which the Court will be asked to make a final decision, pursuant to Fed. R. Civ. P. 23, as to whether this Settlement Agreement is fair, reasonable, and adequate to settle the Class Members' Claims against Defendants and the other Releasees and whether the Court should approve the proposed Settlement.

23. "Family Members" means an individual's father, mother, grandfather, grandmother, sister, brother, spouse/partner, son, and/or daughter, and any person living in or a member of an individual's household.

24. "Final" means, when used in connection with any court order or judgment, that the relevant order or judgment will be final:

a. if no appeal is taken therefrom, on the date on which the time to appeal therefrom (including any potential extension of time) has expired; or

b. if any appeal is taken therefrom, on the date on which all appeals therefrom – including petitions for rehearing or reargument, petitions for rehearing en banc, petitions for certiorari or any other form of review, and any related appeals or petitions, including as to any appeal bond – have been finally disposed of, such that the time to appeal therefrom (including any potential extension of time) has expired, in a manner resulting in an affirmance of the Final Order and the Judgment.

25. "Final Order" means the Order of Dismissal entered by the Court as contemplated in Section XI of this Settlement Agreement, which Order shall be substantially in the form set out as Exhibit B.

26. "Final Settlement Date" means the date on which the Final Order and the Judgment become Final.

9

27.     "Individual Notice" means the notice described in Subsection III.A and the Preliminary Approval Order, as approved by the Court, that Lead Counsel will cause the Claims Administrator to disseminate to potential Class Members informing them of the settlement contemplated by this Settlement Agreement. The Individual Notice shall be substantially in the form set out in Exhibit D. The Claim Form will accompany the Individual Notice and shall be included in mailings and distributions of the Individual Notice.

28.     "Investment Decision" means any decision regarding an investment in Roka common stock during the Class Period, including a decision to hold Roka common stock during the Class Period.

29.     "IPO" means Roka's initial public offering, which became effective on July 17, 2014.

30.     "Judgment" means the Final Judgment entered by the Court as contemplated in Section XI of this Settlement Agreement, which judgment shall be substantially in the form set out as Exhibit C.

31.     "Lead Counsel" means The Rosen Law Firm, P.A.

32.     "Lead Plaintiff" means Stanley Yedlowski, in his individual capacity and as representative of the Class.

33.     "Mediator" means retired United States District Judge Faith Hochberg or, if she is unavailable, someone of similar stature upon whom the Settling Parties agree.

34.     "Net Settlement Amount" means the balance remaining in the Escrow Account (including any interest that has accrued, less Tax Expenses paid or owing) after payments of the Notice and Administrative Expenses and the Attorneys' Fees and Expenses Award pursuant to Sections II and IX below have been made.

35.     "Nominees" means brokerage firms, banks, and other institutions that hold Roka securities in street name or other similar fashion for the benefit of other persons or entities.

36.     "Notice and Administrative Expenses" means all expenses associated with the administration of the Settlement contemplated by this Settlement Agreement, including the Claims Administrator's fees and expenses and all other fees and expenses associated with: printing and sending the Individual Notice to potential Class Members; publishing the Summary Notice; assisting Class Members with filing Claim Forms; processing Claim Forms; setting up and maintaining a toll-free telephone number for potential Class Members to call; and distributing the Net Settlement Amount; *provided*, *however*, that Notice and Administrative Expenses shall not include the Attorneys' Fees and Expenses Award.

37.     "Notice Program" means the program for informing potential Class Members about the proposed Settlement, including the Individual Notice, the Summary Notice, and the manner of delivering and publishing such notices.

38.     "Plan of Allocation" means the terms and procedures for allocating the Net Settlement Amount among, and distributing the Net Settlement Amount to, Authorized Claimants, or such other Plan of Allocation as the Court shall approve.

39.     "Plaintiffs" means Lead Plaintiff and plaintiff Pratik Pitroda.

40.     "Preliminary Approval Date" means the date on which the Court enters the Preliminary Approval Order.

41.     "Preliminary Approval Hearing" means the hearing at or after which the Court preliminarily approves the proposed Settlement and authorizes the issuance of notice to potential Class Members.

42.     "Preliminary Approval Order" means the order to be entered by the Court (*i*) preliminarily approving the proposed Settlement, (*ii*) certifying the Class solely for settlement purposes, (*iii*) appointing the Claims Administrator (*iv*) preliminarily determining that the proposed provision of notice to potential members of the Class pursuant to the Notice Program meets the requirements of Rule 23 of the Federal Rules of Civil Procedure, the PSLRA, the Constitution of the United States, and any other applicable law, and that such notice is the best practicable notice under the circumstances and constitutes due and sufficient notice to all persons and entities entitled to such notice, (*v*) preliminarily enjoining Class Members, and anyone purporting to represent or to pursue claims on behalf of Class Members, from commencing, prosecuting, intervening in, or participating in any claims or causes of action relating to the Action or the Released Plaintiffs' Claims, and (*vi*) scheduling the Fairness Hearing.  The Preliminary Approval Order shall be substantially in the form set out in Exhibit A.

43.     "PSLRA" means the Private Securities Litigation Reform Act of 1995, as codified in the Securities Act and the Exchange Act.

44.     "PSLRA Contribution Bar Order" means the Order, the text of which is set forth in Subsection XII.B below, to be entered by the Court pursuant to § 11(f) of the Securities Act and § 21D(f)(7)(A) of the Exchange Act (15 U.S.C. § 78u-4(f)(7)(A)).

45.     "Qualified Settlement Fund" means a fund within the meaning of Treasury Regulations § 1.468B-1.  The Escrow Account shall be treated for tax purposes as a Qualified Settlement Fund under this Settlement Agreement.

46.     "Registration Statement" means the Registration Statement and prospectus (including all drafts and amendments) issued in connection with Roka's IPO.

47.     "Released Defendants' Claims" means each and every Claim that has been, could have been, or could be asserted in the Action or in any other proceeding by any Releasee, including any Defendant or the successors and assigns of any Defendant, against Plaintiffs, any other Class Member, or their attorneys (including Lead Counsel), that arises out of or relates in any way to the institution, prosecution, or settlement of the Action, except for claims to enforce the Settlement.

48.     "Released Plaintiffs' Claims" means each and every Claim that Plaintiffs or any other Class Member (*i*) asserted against any of the Releasees in the Action (including all Claims alleged in the original complaint and in the Complaint) or (*ii*) could have asserted or could assert against any of the Releasees in connection with the facts and circumstances alleged in the Action, whether arising under any federal, state, or other statutory or common-law rule, in any court, tribunal, agency, or other forum, that both (A) arises out of or relates to the purchase or other acquisition of Roka common stock during the Class Period, or any other Investment Decision concerning Roka common stock during the Class Period, and (B) relates directly or indirectly to (1) Roka's method for testing for foodborne pathogens, Roka's Atlas instruments and assays, customers' use of Roka's Atlas instruments and assays, laboratory operators' ability to use Roka's Atlas instruments and assays, difficulties (including false positives) that customers experienced in using Roka's Atlas instruments and assays, customers' and Roka's responses to those difficulties, Roka's revised workflow for use of its assays, Roka's alleged awareness of customers' difficulties in using Roka's Atlas instruments and assays and of the efficacy of its efforts (including the revised workflow) to resolve those difficulties, Roka's redesign of its *Listeria* assay, Roka's financial condition (including its revenues and expenses) and prospects, the Registration Statement, Roka's third-quarter and fourth-quarter 2014 earnings reports and

13

financial disclosures, Roka's internal controls, processes, and procedures relating to accounting

or disclosure matters, and any other alleged breaches of Releasees' duties to Roka or its

shareholders, and/or (2) any alleged statements about – or alleged failures to disclose information

about – any of the foregoing matters. The term "Released Plaintiffs' Claims" includes any

Claims arising out of or relating to both (*i*) the purchase or other acquisition of Roka common

stock during the Class Period, or any other Investment Decision during the Class Period

concerning Roka securities issued pursuant or traceable to the Registration Statement, and

(*ii*) any or all of the acts, failures to act, omissions, misrepresentations, facts, events, matters,

transactions, occurrences, or oral or written statements or representations of Releasees that were

or could have been alleged under the facts and circumstances pled in the Action (including in the

Complaint and the original complaint), including:

a.   Roka's method for testing for foodborne pathogens,

including how the testing is done, the amount of time needed to obtain test results, the

differences between Roka's testing method and other available methods, and the

advantages and alleged disadvantages of Roka's testing method [*e.g.*, Complaint ¶¶ 8, 44-

51, 60-65, 77, 83-91, 96, 107-108];

b.   placements of Roka's Atlas instruments and sales of assay

kits [*e.g.*, *id.* ¶¶ 19, 111];

c.   the training required for use of Roka's Atlas testing system

[*e.g.*, *id.* ¶ 58];

d.   false positives and other difficulties that Roka's customers

or prospective customers experienced in using the Atlas instrument or Roka's assays

[*e.g.*, *id.* ¶¶ 93, 95-99, 102-103, 105, 138];

14

e.      contamination of test samples, sample bags, sample tubes, or Atlas instruments [*e.g.*, *id.* ¶¶ 10, 15, 81-82, 105-107, 138, 140];

f.      returns of Atlas instruments by customers or prospective customers [*e.g.*, *id.* ¶¶ 15, 101, 116, 138, 140];

g.      loss of customers or prospective customers, or reductions in their purchases and use of Roka's assays [*e.g.*, *id.* ¶¶ 15, 102, 104, 110, 116, 121, 138, 140];

h.      Roka's customers; the staffing of and conditions in their laboratories; their employees' training, qualifications, experience, and compensation; errors made by their lab technicians; and Roka's alleged knowledge of those issues [*e.g.*, *id.* ¶¶ 10, 18, 79-81, 96, 117-118, 141];

i.      Roka's efforts to resolve false positives and other customer difficulties, including the revised workflow that Roka introduced in the spring of 2014 [*e.g.*, *id.* ¶¶ 13, 15, 97, 98];

j.      Roka's alleged knowledge of customers' complaints and of whether the new workflow and other efforts to resolve customers' issues were succeeding and would succeed in the future [*e.g.*, *id.* ¶¶ 14, 18, 20, 25, 96-99, 102-105, 108, 113, 115-116, 127, 138, 140];

k.      Roka's redesign of its *Listeria* assay after the IPO, including Roka's alleged awareness of the need to do so and the timing of the new assay's availability [*e.g.*, *id.* ¶¶ 16-17, 20, 92-93, 107, 118-119, 128];

l.      Roka's financial condition, revenues, net income, and other financial metrics, and auditors' comments about Roka's financial condition [*e.g.*, *id.* ¶¶ 17, 23, 66-68, 73, 111-112];

m.      Roka's future financial and business prospects and its expectations about future earnings, expenses, instrument placements, and assay usage [*e.g.*, *id.* ¶¶ 2, 17, 23];

n.      expectations, trends, or uncertainties concerning the food-testing business, Roka's position in the industry, and Roka's plans for the future [*e.g.*, *id.* ¶¶ 39-42, 44; *see also* original complaint ¶¶ 23-24, 28];

o.      the Registration Statement, including its compliance with Item 303 of Regulation S-K and other applicable laws and requirements [*e.g.*, Complaint ¶¶ 18, 69-72, 130-138];

p.      Roka's third-quarter 2014 earnings announcement and financial statements [*e.g.*, *id.* ¶¶ 19, 114-116, 125];

q.      Roka's statements about the status of its contracts and transactions [*e.g.*, *id.* ¶¶ 20, 121, 137];

r.      Roka's fourth-quarter 2014 earnings announcement and 4Q14 financial statements [*e.g.*, *id.* ¶¶ 23, 123-125]; and

s.      Roka's statements about, or alleged omissions concerning, any or all of the above matters.

The term "Released Plaintiffs' Claims" also includes any Claim relating to the initiation, litigation, settlement, or dissemination of notice of the Action; *provided, however*, that

the term "Released Plaintiffs' Claims" does *not* include any claims to enforce this Settlement Agreement.

49.     "Releasee" means each and every one of, and "Releasees" means all of, the following:

a.     Defendants and their Family Members, heirs, successors, representatives, agents, and assigns;

b.     Each and every entity that falls within the definition of Roka Releasees (defined below); and

c.     Each of the Roka Releasees' respective past and present directors, executive-committee members, officers, officials, employees, members, partners, principals, agents, attorneys (including in-house or outside attorneys (including Defendants' Counsel) employed or retained by the Roka Releasees), advisors, investment bankers, trustees, administrators, fiduciaries, consultants, actuaries, representatives, accountants, accounting advisors, auditors, insurers, and reinsurers.

50.     "Releasor" means each and every one of, and "Releasors" means all of, (*i*) Plaintiffs, (*ii*) all other Class Members, (*iii*) their respective past or present parents, predecessors, successors, heirs, representatives, agents, assigns, Affiliates, divisions, business units, subsidiaries, any entities in which any Releasor has or had a Controlling Interest or that has or had a Controlling Interest in him, her, or it, and any other person or entity (including any governmental entity) claiming by or through, on behalf of, for the benefit of, derivatively for, or as representative of Plaintiffs or any other Class Member, and (*iv*) the respective past and present directors, governors, executive-committee members, officers, officials, employees, members, partners, principals, agents, attorneys (including their General Counsel and other in-house or

17

outside attorneys), advisors, trustees, administrators, fiduciaries, consultants, service providers, representatives, successors in interest, assigns, beneficiaries, heirs, executors, accountants, accounting advisors, and auditors of any or all of the above persons or entities.

51.     "Roka" or the "Company" means Roka Bioscience, Inc., a Delaware corporation.

52.     "Roka Releasees" means each and all of Roka and any or all of its respective past or present parents, predecessors, successors, Affiliates, divisions, business units, and subsidiaries, and any other entities in which Roka has a Controlling Interest or that have a Controlling Interest in it.

53.     "Securities Act" means the Securities Act of 1933, as amended.

54.     "Settlement" means the settlement contemplated by this Settlement Agreement.

55.     "Settlement Agreement" means this Stipulation of Settlement and any accompanying exhibits, including any subsequent amendments thereto and any exhibits to such amendments, as well as the Supplemental Agreement.

56.     "Settlement Amount" means three million two hundred seventy five thousand United States dollars ($3,275,000).

57.     "Settling Parties" means Plaintiffs (on behalf of themselves and the Class Members) and Defendants.

58.     "Summary Notice" means the notice that is described in Subsection III.B and that shall be substantially in the form set out as Exhibit F.

59.     "Supplemental Agreement" means the separate agreement among the Settling Parties concerning Defendants' right to terminate the Settlement based on exclusion

18

requests submitted by potential Class Members.  The Supplemental Agreement shall not be filed with the Court unless and until (*i*) the Court otherwise orders or (*ii*) a dispute arises among the Settling Parties concerning that agreement's interpretation or application.  If the Supplemental Agreement is provided to the Court, the parties shall seek leave to file it under seal.

   60. "Tax Expenses" means (*i*) all taxes on the income of the monies in the Escrow Account and (*ii*) any expenses and costs incurred in connection with the taxation of the Escrow Account (including expenses of tax attorneys and accountants).

   61. "Unknown Claims" means any and all Released Plaintiffs' Claims that any Plaintiff or any other Class Member does not know or suspect to exist in his, her, or its favor at the time of the release of the Releasees, and any Released Defendants' Claims that any Defendant does not know or suspect to exist in his or its favor, which, if known by Plaintiffs, the other Class Members, or Defendants, might have affected his, her, its, or their decision(s) concerning the Settlement.  As to any and all Released Plaintiffs' Claims and Released Defendants' Claims, the Settling Parties stipulate and agree that, upon the Final Settlement Date, Plaintiffs and Defendants shall expressly waive, and each other Class Member, Releasor, and releasee shall be deemed to have waived, and by operation of the Final Order and the Judgment shall have expressly waived, any and all provisions, rights, and benefits conferred by any law of any state or territory of the United States or of any other country, or any principle of common law, that is similar, comparable, or equivalent to Cal. Civ. Code § 1542, which provides:

> A general release does not extend to claims which the creditor does
> not know or suspect to exist in his or her favor at the time of
> executing the release, which if known by him or her must have
> materially affected his or her settlement with the debtor.

Plaintiffs and Defendants acknowledge, and the other Class Members by operation of law shall be deemed to have acknowledged, that the inclusion of "Unknown Claims" in the definition of

19

Released Plaintiffs' Claims and Released Defendants' Claims was separately bargained for and was a key element of the Settlement.

B.   **Capitalized Terms**

1.      Capitalized terms used in this Settlement Agreement, but not defined above, shall have the meaning ascribed to them in this Settlement Agreement.

C.   **Confirmatory Discovery**

1.      Subject to the provisions of the Stipulation and Agreed Confidentiality Order (the "Confidentiality Order") in the form attached as Exhibit G, to be entered into by Lead Plaintiff and Roka and to be approved by the Court, Lead Plaintiff (through Lead Counsel) will conduct reasonable discovery into the facts underlying the claims in the Complaint to confirm that the underlying facts are consistent with Lead Plaintiff's and Lead Counsel's understanding that the proposed Settlement is fair, reasonable, and adequate.

2.      Confirmatory discovery, as determined by Lead Plaintiff, Lead Counsel, and Roka, will consist of document review and interviews of present or former Roka employees with knowledge of the events that gave rise to the claims in the Action.

3.      The confirmatory discovery may be used solely for purposes of assessing the fairness, reasonableness, and adequacy of the proposed Settlement and for no other purpose whatsoever (including litigation of claims in the Action or in any other proceeding).

4.      The confirmatory discovery contemplated by this Settlement Agreement shall be conducted within 45 days after the Preliminary Approval Date, but in any case shall be completed before the Fairness Hearing.

5.      Subject to Sections XII and XV below, if, as a result of the confirmatory discovery contemplated by this Subsection I.C, Plaintiffs and Lead Counsel reasonably and in

good faith do not believe that the proposed Settlement Agreement is fair, reasonable, and adequate, they will have the right to terminate this Settlement Agreement within ten (10) days after the conclusion of the confirmatory discovery.

## II.     TERMS AND CONDITIONS OF THE SETTLEMENT

### A.     Payment of Settlement Amount

1.     Roka shall cause the Settlement Amount to be transferred into the Escrow Account within fourteen (14) business days after entry of the Preliminary Approval Order.  If the Settlement Amount is not transferred to the Escrow Account within fourteen (14) business days after entry of the Preliminary Approval Order, Lead Counsel shall notify Roka that the transfer has not occurred, and Roka shall have five (5) business days to obtain compliance with the obligation to transfer the Settlement Amount into the Escrow Account.  If transfer has still not occurred after that second period of five (5) business days, Plaintiffs may, subject to Section XV below, terminate this Settlement Agreement.

2.     The Settlement Amount shall be "non-recapture," meaning that no portion of it shall revert to Defendants or any other payor if any money remains after all claims and expenses have been paid, *provided* that the Settlement becomes Final and effective pursuant to this Settlement Agreement.

3.     Neither Defendants nor any other payor of the Settlement Amount shall have any legal or equitable interest in the funds in the Escrow Account unless and until an event of termination occurs as provided in this Settlement Agreement (including the Supplemental Agreement), or the Settlement otherwise does not become Final; *provided, however,* that Defendants shall be entitled in accordance with the terms of the Settlement Agreement to monitor and approve expenses paid from the Escrow Account before the Final Settlement Date.

B.      **Escrow Agent**

1.      The Escrow Agent shall (*i*) administer the Escrow Account, (*ii*) invest the Settlement Amount in instruments backed by the full faith and credit of the United States Government or fully insured by the United States Government or an agency thereof, and (*iii*) reinvest the proceeds of those instruments as they mature in similar instruments at their then-current market rates.  The Escrow Account shall bear all risks related to investment of the amounts in the Escrow Account made in accordance with the guidelines set forth in this paragraph.

2.      The proceeds of the Escrow Account shall be disbursed only as provided in this Settlement Agreement, by an order of the Court, or, before the Final Settlement Date, with the written agreement of Defendants' Counsel and Lead Counsel; *provided, however*, that disbursements from the Escrow Account for the payment of Tax Expenses or Notice and Administrative Expenses, as set forth herein, shall be made by the Escrow Agent at the direction of Lead Counsel in accordance with the terms of this Settlement Agreement.  After the Final Settlement Date, Lead Counsel shall have sole responsibility for the administration of the Escrow Account in accordance with the terms of this Settlement Agreement.

3.      Subject to further order and/or direction as may be made by the Court, the Escrow Agent is authorized to execute such transactions on behalf of the Class Members as are consistent with the terms of this Settlement Agreement.

4.      The Settlement Amount and the Net Settlement Amount shall be deemed and considered to be *in custodia legis* of the Court and shall remain subject to the Court's jurisdiction until such time as they shall be distributed pursuant to this Settlement Agreement and/or further order(s) of the Court.

5.      After the Settlement Amount is deposited into the Escrow Account and before the Final Settlement Date, Lead Counsel may direct the Escrow Agent to pay from the Escrow Account all reasonable Notice and Administrative Expenses up to the sum of $150,000. Any expenditures exceeding $150,000 before the Final Settlement Date will be subject to agreement by Defendants' Counsel, which agreement shall not be unreasonably withheld.  After the Final Settlement Date, Lead Counsel may, with approval of the Court, direct the payment of any Notice and Administrative Expenses that Lead Counsel believes in its discretion are necessary and appropriate to carry out the terms of this Settlement Agreement.

6.      Any dispute about the payment of expenses from the Escrow Account before the Final Settlement Date will be submitted to the Mediator for binding resolution.

### C.      Qualified Settlement Fund

1.      All necessary steps to enable the Escrow Account to be treated as a Qualified Settlement Fund for tax purposes shall be taken, including the timely filing by Lead Counsel and/or its agents of all elections and statements required for tax purposes pursuant to Treas. Reg. §§ 1.468B-0 through 1.468B-5, or any other relevant statutes, regulations, or published rulings now or hereafter enacted or promulgated, for all taxable years of the Escrow Account, beginning with the date of its establishment.  Lead Counsel shall be the "administrator" of the Qualified Settlement Fund for tax purposes under Treas. Reg. §§ 1468 B-0 through B-5, shall file or cause to be filed on a timely basis any required federal, state, and local tax returns, and shall cause any taxes due on the income of the Qualified Settlement Fund to be paid from the Escrow Account.  The Settling Parties agree that the Escrow Account shall be treated as a Qualified Settlement Fund, as provided in Treas. Reg. §§ 1.468B-0 through 1.468B-5, from the earliest date possible, and hereby agree to any relation-back election required to treat the Escrow

23

Account as a Qualified Settlement Fund from the earliest date possible. In no event shall Defendants have any responsibility whatsoever for filing elections, other required statements, or tax returns, or for paying the costs associated therewith, any taxes due, or the expenses of notice or administration of the Escrow Account. Lead Counsel and Defendants' Counsel shall cooperate to the extent necessary to comply with this Subsection II.C. Upon request by Lead Counsel, Roka shall promptly provide the statement described in Treasury Regulation § 1.468B-3(e).

2.     Upon request by Defendants' Counsel, Lead Counsel shall promptly provide to Defendants' Counsel all information available to Lead Counsel and requested in connection with any tax returns that Roka or any other Releasee must file or with any other report or filing that Roka or any other Releasee must make concerning the Settlement Amount or any portion of it.

D.     **Distribution of the Net Settlement Amount**

1.     If the proposed Settlement becomes Final, the Net Settlement Amount shall be distributed pursuant to such Plan of Allocation as the Court approves.

2.     No person or entity shall have any Claim against Lead Plaintiff, Lead Counsel, the Claims Administrator, the Escrow Agent, or any of their agents, or against any Releasee (including Defendants' Counsel), relating to or arising out of any distributions or lack thereof made under any Court-approved Plan of Allocation, this Settlement Agreement, or orders of the Court.

3.     The Settling Parties understand and agree that, notwithstanding any other provision of this Settlement Agreement, a court-ordered or court-approved change to the Plan of Allocation shall not operate to modify, terminate, or cancel this Settlement Agreement or affect

24

the finality of the Final Order and the Judgment or any other orders entered by the Court giving effect or pursuant to this Settlement Agreement.

4.     Development of the Plan of Allocation shall be exclusively the responsibility of Lead Plaintiff and Lead Counsel.  Defendants, the other Releasees, and their respective counsel, including Defendants' Counsel, shall have no role in, responsibility for, or liability as to or in connection with, and shall take no position on, (*i*) the Plan of Allocation, (*ii*) the form, substance, method, or manner of allocation, administration, or distribution of the Net Settlement Amount, (*iii*) any tax liability that a Class Member might incur as a result of this Settlement Agreement, or (*iv*) the result of any action taken pursuant to this Settlement Agreement, the administration or processing of claims (including determinations as to the validity of Claim Forms), the amounts of claims or distribution of the Net Settlement Amount, or (except as set out above) the maintenance of the Escrow Account as a Qualified Settlement Fund.

5.     Class Members shall look solely to the Net Settlement Amount for settlement and satisfaction of all Released Plaintiffs' Claims and only to the extent expressly provided by this Settlement Agreement, the Court-approved Plan of Allocation, or an order of the Court.  Under no circumstances will any of the Settling Parties or any Releasee be responsible for the payment of any fees, costs, expenses, or other funds associated with or arising out of the Settlement contemplated by this Settlement Agreement other than as provided herein.

6.     To the extent that any monies remain in the Escrow Account after the Claims Administrator has caused initial distributions to be made from the Net Settlement Amount to all Authorized Claimants, such monies shall be (*i*) used for the payment of any unpaid costs or fees incurred in administering the Escrow Account for such redistribution and then (*ii*) distributed to Class Members who have cashed their initial distribution checks and who

would receive at least $10.00 from such redistribution.  If any funds remain in the Escrow

Account after such redistribution(s), or if any such redistribution is not economically feasible,

the unpaid residue shall be given to the Center for Foodborne Illness Research and Prevention or

a similar nonprofit organization to be agreed upon by the Settling Parties.

       E.      **Plan of Allocation**

       1.     All cash distributions to Authorized Claimants shall be paid from the Net

Settlement Amount pursuant to a Plan of Allocation approved by the Court.

       2.     The Plan of Allocation is not a necessary term of this Settlement

Agreement, and this Settlement Agreement is not conditioned on the approval of any particular

plan of allocation.

       3.     To receive a cash distribution from the Net Settlement Amount pursuant to

any approved Plan of Allocation, a Class Member must be an Authorized Claimant pursuant to

the procedures set out in this Settlement Agreement or by order of the Court.

       4.     Unless otherwise authorized by the Court, each Class Member who wishes

to receive a distribution from the Net Settlement Amount must complete and submit a Claim

Form, as directed in the Individual Notice or the Claim Form.  The Claim Form must be

postmarked no later than the date stated in the form, unless otherwise allowed by Lead Counsel

or the Court, and must be sent to an address stated in the form.

       5.     The Claim Form must be made subject to the penalties of perjury pursuant

to 28 U.S.C. § 1746 and be supported by such documents and other information as called for in

the Claim Form.

       6.     The validity of each submitted Claim Form will initially be determined by

the Claims Administrator in accordance with the Plan of Allocation approved by the Court.  The

Claims Administrator shall advise the Class Member in writing if it determines to reject the claim. Lead Counsel shall have the right, but not the obligation, to advise the Claims Administrator to waive, in the interests of achieving substantial justice, what Lead Counsel deems to be formal or technical defects in any Claim Forms submitted. Lead Counsel, its designees or agents, Plaintiffs, Defendants' Counsel, Defendants, the other Releasees, and their counsel shall not have any liability arising out of any such determinations.

7.     If any Class Member whose claim has been rejected in whole or in part desires to contest such rejection, the Class Member must, within twenty (20) days after the date of such rejection, submit to Lead Counsel a notice and statement of reasons explaining the Class Member's grounds for contesting the rejection, along with any supporting documentation. If a dispute concerning a claim cannot be otherwise resolved, Lead Counsel shall thereafter present the request for review to the Court. The administration of the Escrow Account and the Net Settlement Amount, and decisions on all disputed questions of law and fact concerning the validity of any Claim Form or regarding the rejection or amount of any claim, shall remain under the jurisdiction of the Court. All Class Members and Settling Parties expressly waive trial by court or jury (to the extent any such right might exist) and any right of appeal or review as to the Court's determinations. Any Class Member pursuing a dispute shall be responsible for his, her, or its own costs, including attorneys' fees, incurred in pursuing the dispute.

8.     The Net Settlement Fund shall not be distributed to Authorized Claimants until the Final Settlement Date has occurred.

9.     Unless otherwise ordered by the Court or otherwise provided for herein, any Class Member who fails to submit a valid and timely Claim Form shall be barred from receiving a distribution from the Net Settlement Amount, but shall nevertheless be bound by the

Release and all proceedings, orders, and judgments in the Action even if he, she, or it has

pending, or subsequently initiates, any litigation, arbitration, or other proceeding, or has any

Claim, against any or all of the Releasees that is a Released Plaintiffs' Claim.

## III.    NOTICE TO THE CLASS

### A.    Individual Notice

1.    Subject to the requirements of the Preliminary Approval Order, and in

accordance with all applicable laws, Lead Counsel shall cause to be delivered a copy of the

Individual Notice and the Claim Form by first-class mail to all potential Class Members who can

be identified through reasonable efforts from Roka's records, depositary institutions' records,

and any other inquiries conducted by the Claims Administrator.  The Claims Administrator will

implement the mailing of the Individual Notice and the Claim Form.

2.    The Individual Notice shall be mailed at least 80 days before the deadline

for objecting to the proposed Settlement.

3.    Notices also will be provided by Roka to U.S. Federal and state officials if

and to the extent required by the Class Action Fairness Act ("CAFA").  The Settling Parties shall

request a schedule for the Preliminary Approval Hearing that allows for the notice period

prescribed in CAFA.  CAFA notice shall be at Roka's expense.

4.    The Claims Administrator will also post the Individual Notice on its

website by no later than the date on which the first Individual Notices are mailed to potential

Class Members.

### B.    Summary Notice

1.    Subject to the requirements of the Preliminary Approval Order, and in

accordance with all applicable laws, Lead Counsel shall cause a copy of the Summary Notice to

28

be published once each in *The Wall Street Journal* and *Investor's Business Daily* as well as on wire services.

   2. The Summary Notice shall be published within ten days after the mailing date for the Individual Notice.

   C. **Notice Costs**

   1. All expenses incurred in connection with the provision of the Individual Notice and the publication of the Summary Notice will be paid from the Settlement Amount in the Escrow Account as Notice and Administrative Expenses.

## IV. APPOINTMENT OF CLAIMS ADMINISTRATOR

   A. As provided in the Preliminary Approval Order, the Claims Administrator shall be appointed to help implement the Settlement contemplated by this Settlement Agreement. The Settling Parties will ask the Court to appoint Strategic Claims Services as Claims Administrator. Roka shall cooperate in the administration of the Settlement Agreement to the extent reasonably necessary to effectuate its terms (but not including any acts that the Claims Administrator or other Settling Parties are required to undertake pursuant to this Settlement Agreement).

   B. The Claims Administrator shall perform various tasks as directed by Lead Counsel, including: (*i*) distributing the Individual Notice to potential Class Members; (*ii*) arranging for publication of the Summary Notice; (*iii*) publishing the Individual Notice and other documents about the Action on the Claims Administrator's website; (*iv*) answering written inquiries from potential Class Members and/or forwarding such inquiries to Lead Counsel; (*v*) providing additional copies of the Individual Notice, upon request, to Nominees or potential Class Members; (*vi*) receiving and maintaining any requests for exclusion from the Settlement received from potential Class Members; (*vii*) receiving and processing Claim Forms from Class

29

Members; (*viii*) mailing or causing to be mailed to Authorized Claimants their distributions under the Plan of Allocation; and (*ix*) otherwise administering and implementing this Settlement Agreement.

C.     As ordered by the Court in the Preliminary Approval Order, the Claims Administrator shall establish and staff with representatives knowledgeable about this Settlement Agreement and the Plan of Allocation a toll-free telephone number for responding to inquiries from potential Class Members about this Settlement Agreement and any issues relating to the Action.

D.     All settlement-administration expenses, including the Claims Administrator's fees and expenses, will be paid from the Settlement Amount in the Escrow Account.

## V.     RIGHT TO COMMUNICATE WITH CLASS MEMBERS

A.     Lead Plaintiff acknowledges and agrees that Releasees' right to communicate orally and in writing with Roka's shareholders (including potential Class Members) about the Action and the proposed Settlement is limited to the following:

1.     Communications regarding the subject matter of this Settlement Agreement between potential Class Members and representatives of the Releasees whose responsibilities include investor relations;

2.     Communications as may be necessary to implement the terms of this Settlement Agreement; and

3.     Such communications as may be made in the conduct of Releasees' business, including complying with any applicable NASDAQ requirements.

B.     Subject to Subsection XV.C below, the Settling Parties, Lead Counsel, and Defendants' Counsel agree to cooperate in good faith to ensure that any comments about or

30

descriptions of the proposed Settlement are balanced, fair, and accurate and that Defendants'

participation in this proposed Settlement will be set forth in the most positive light.  The Settling

Parties, Lead Counsel, and Defendants' Counsel agree that they will refrain from asserting that

the Action was brought or defended in bad faith.  Except as provided in the Individual Notice

and the Summary Notice, or as permitted by Sections IV, V, and XV.C, the Settling Parties, Lead

Counsel, and Defendants' Counsel agree that none of them will comment publicly on the merits

of the Claims or defenses asserted in the Action except in the most general terms in the context

of supporting or commending the Settlement terms.

## VI.   REQUESTS FOR EXCLUSION

A.      Unless otherwise ordered by the Court, any potential Class Member who wishes

to be excluded from the Class must mail by first-class mail or otherwise deliver a written request

for exclusion to the Claims Administrator, at the address provided in the Individual Notice or the

Summary Notice, such that the exclusion request is received no later than thirty-five (35) days

before the Fairness Hearing, or as the Court may otherwise direct.  A list of the persons and

entities who have validly and timely requested exclusion from the Class shall be provided by the

Settling Parties to the Court at or before the Fairness Hearing.

B.      Unless otherwise ordered by the Court, a potential Class Member's request for

exclusion must include the following information:  (*i*) name, (*ii*) address, (*iii*) telephone number,

(*iv*) e-mail address, if available, (*v*) number of shares of Roka securities purchased or otherwise

acquired or sold during the Class Period, (*vi*) price(s) paid or value at receipt, and, if sold, the

sales price(s), (*vii*) the date of each such transaction involving each Roka security, and

(*viii*) account statements verifying all such transactions and the number of securities still held.

C.      Unless otherwise ordered by the Court, any potential Class Member who does not submit a timely written request for exclusion as provided by this Section VI shall nevertheless be bound by the Release and by all proceedings, orders, and judgments in the Action, even if he, she, or it has pending or subsequently initiates litigation, arbitration, or any other proceeding, or has any other Claim, against any or all of the Releasees relating to any of the Released Plaintiffs' Claims.

D.      Plaintiffs agree that they will not exclude themselves from the Class or the Settlement.

## VII.   OBJECTIONS TO SETTLEMENT

A.      Unless otherwise ordered by the Court, any Class Member who wishes to object to the fairness, reasonableness, or adequacy of this Settlement Agreement, to any term(s) of this Settlement Agreement, to the Plan of Allocation, or to the Attorneys' Fees and Expenses Application must both serve on Lead Counsel and Defendants' Counsel and file with the Court a statement of his, her, or its objection(s); *provided, however*, that a potential Class Member who requests exclusion from the Class shall not be entitled to submit an objection.  Any such objection must be received by Lead Counsel, Defendants' Counsel, and the Court by no later than twenty (20) days before the Fairness Hearing, or as the Court may otherwise direct.

B.      The Class Member's statement of objection shall state the specific reason(s), if any, for each objection, including any legal support the Class Member wishes to bring to the Court's attention and any evidence the Class Member wishes to introduce in support of such objection.  Any objection must also include the following information about the Class Member:  (*i*) name, (*ii*) address, (*iii*) telephone number,

32

(*iv*) e-mail address, if available, (*v*) number of shares of Roka securities purchased or otherwise acquired or sold during the Class Period, (*vi*) price(s) paid or value at receipt, and, if sold, the sales price(s), (*vii*) the date of each transaction, and (*viii*) account statements verifying all such transactions and the number of securities still held.

C.     Any Class Member may file an objection on his, her, or its own, or through an attorney hired at his, her, or its own expense.  If a Class Member hires an attorney to represent him, her, or it in connection with filing an objection, the attorney must both serve on Lead Counsel and Defendants' Counsel and file with the Court a notice of appearance.  Any such notice of appearance must be received by Lead Counsel, Defendants' Counsel, and the Court by no later than twenty (20) days before the Fairness Hearing, or as the Court otherwise may direct.

D.     Any requests by Class Members, or by an attorney hired at their expense, for access to discovery materials in the Action shall be subject to the provisions of the Preliminary Approval Order, which shall include confidentiality provisions under the Confidentiality Order.

E.     Lead Counsel shall promptly inform Defendants' Counsel of any request by Class Members or their attorneys for access to discovery materials in the Action and shall identify for Defendants' Counsel any such Class Member (as well as his, her, or its attorney (if any)) who requests access to discovery materials and the date on which such access is requested.

F.     Any Class Member who files and serves a written objection pursuant to this Section VII – and, unless otherwise ordered by the Court, only such Class Members – may appear at the Fairness Hearing, either in person or through counsel hired at the

Class Member's expense, to object to the fairness, reasonableness, or adequacy of this

Settlement Agreement, to any term(s) of this Settlement Agreement, to the Plan of

Allocation, or to the Attorneys' Fees and Expenses Application.  Class Members or their

attorneys intending to make an appearance at the Fairness Hearing must both serve on

Lead Counsel and Defendants' Counsel and file with the Court a notice of intention to

appear.  Any such notice must be received by Lead Counsel, Defendants' Counsel, and

the Court by no later than twenty (20) days before the Fairness Hearing, or as the Court

otherwise may direct.

       G.     Any Class Member who fails to comply with any of the provisions of this

Section VII shall waive and forfeit any and all rights he, she, or it might otherwise have

to appear separately at the Fairness Hearing and/or to object to this Settlement

Agreement, the Plan of Allocation, or the Attorneys' Fees and Expenses Application, and

shall be bound by all the terms of this Settlement Agreement and by all proceedings,

orders, and judgments in the Action.

## VIII.   RELEASE AND WAIVER, AND ORDER OF DISMISSAL

       A.    **Release and Waiver**

       1.     Pursuant to the Final Order and the Judgment, without further action by

anyone, and whether or not a Claim Form has been executed and/or delivered by or on behalf of

any such Class Member, and subject to Subsection VIII.A.4 below, on and after the Final

Settlement Date, Lead Plaintiff and all other Class Members, on behalf of themselves and their

other Releasors, for good and sufficient consideration, shall be deemed to have, and by operation

of law and of the Final Order and the Judgment shall have, fully, finally, and forever released,

relinquished, settled, and discharged:

a.      all Released Plaintiffs' Claims against each and every one of the Releasees;

b.      all Claims, damages, and liabilities as to each and every one of the Releasees to the extent that any such Claims, damages, or liability relate in any way to any or all acts, omissions, nondisclosures, facts, matters, transactions, occurrences, or oral or written statements or representations in connection with, or directly or indirectly relating to, (*i*) the prosecution, defense, or settlement of the Action, (*ii*) the facts and circumstances of this Settlement Agreement, the Settlement terms, and their implementation, (*iii*) the provision of notice in connection with the proposed Settlement, and/or (*iv*) the resolution of any Claim Forms filed in connection with the Settlement; and

c.      all Claims against any of the Releasees for attorneys' fees, costs, or disbursements incurred by Lead Plaintiff's counsel (including Lead Counsel) or any other counsel representing Plaintiffs or any other Class Member in connection with or related in any manner to the Action, the settlement of the Action, or the administration of the Action and/or its Settlement, except to the extent otherwise specified in this Settlement Agreement.

2.      Pursuant to the Final Order and the Judgment, without further action by anyone, and subject to Subsection VIII.A.4 below, on and after the Final Settlement Date, each and all Releasees, including Defendants' Counsel, for good and sufficient consideration, the receipt and adequacy of which are hereby acknowledged, shall be deemed to have, and by operation of law and of the Final Order and the Judgment shall have, fully, finally, and forever released, relinquished, settled, and discharged each and all Releasors, as well as Lead Counsel,

35

from any and all Released Defendants' Claims, except to the extent otherwise specified in this Settlement Agreement.

3.      Pursuant to the Final Order and the Judgment, without further action by anyone, and subject to Subsection VIII.A.4 below, on and after the Final Settlement Date, Plaintiffs and their counsel (including Lead Counsel), on behalf of themselves, their heirs, executors, administrators, predecessors, successors, Affiliates, assigns, and any person or entity claiming by or through any of them, for good and sufficient consideration, the receipt and adequacy of which are hereby acknowledged, shall be deemed to have, and by operation of law and of the Final Order and the Judgment shall have, fully, finally, and forever released, relinquished, settled, and discharged Defendants' Counsel and all other Releasees from any and all Claims that relate in any way to any and all acts directly or indirectly relating to the prosecution, defense, or settlement of the Action or to this Settlement Agreement, except to the extent otherwise specified in this Settlement Agreement.

4.      Notwithstanding Subsections VIII.A.1, VIII.A.2, and VIII.A.3 above, nothing in the Final Order or the Judgment shall bar any action or Claim by the Settling Parties or their counsel to enforce the terms of this Settlement Agreement or the Final Order or the Judgment.

5.      The releases and waivers contained in this Section VIII were separately bargained for and are essential elements of this Settlement Agreement.

B.      **Final Judgment and Order of Dismissal**

1.      The Settling Parties will seek and obtain from the Court a Final Order and a Judgment as further described in Section XI below.

36

## IX.   ATTORNEYS' FEES AND EXPENSES

A.      Lead Counsel may apply for an award of Attorneys' Fees and Expenses at or after the Fairness Hearing.

B.      Subject to Subsections IX.C through IX.E, below, the Attorneys' Fees and Expenses Award shall be paid to Lead Counsel from the Escrow Account within five business days after the Court issues the order setting out the Attorneys' Fees and Expenses Award.  Such payment shall be made pursuant to this Subsection IX.B notwithstanding the existence of any timely filed objections or appeals to the Attorneys' Fees and Expenses Award; *provided, however,* that such payment shall be subject to Lead Counsel's obligation to make appropriate repayment to the Escrow Account (plus interest calculated at the same net rate as earned by the balance of the Escrow Account, such calculation to begin as of the day the Attorneys' Fees and Expenses Award was paid and to end as of the day the repayment is made pursuant to this Subsection IX.B) within five (5) business days if, as a result of any reconsideration proceedings, appellate review, and/or further proceedings on remand, the Attorneys' Fees and Expenses Award is reduced or reversed, or if this Settlement Agreement is properly and timely terminated in accordance with its terms.

C.      As a condition of receiving the Attorneys' Fees and Expenses Award, Lead Counsel, on behalf of itself and each of its partners, members, and/or shareholders, agrees that the law firm and its partners, members, and/or shareholders are subject to the jurisdiction of the Court for the purpose of enforcing the obligations in this Section IX.

D.      No Releasee shall be liable or obligated to pay any fees, expenses, costs, or disbursements to, or incur any expense on behalf of, any person or entity (including Lead

37

Plaintiff and Lead Counsel), directly or indirectly, in connection with the Action or this Settlement Agreement, except as expressly provided for in this Settlement Agreement.

  E. No Releasee shall have any responsibility whatsoever in connection with the allocation of the Attorneys' Fees and Expenses Award between or among Lead Plaintiff's counsel, any other counsel purporting to represent any Class Member, or any other counsel asserting a right to receive a portion of the Attorneys' Fees and Expenses Award or any other amount of attorneys' fees or expenses in connection with this Action.

## X. PRELIMINARY APPROVAL HEARING AND PRELIMINARY APPROVAL ORDER

  A. Promptly after this Stipulation has been fully executed, Lead Counsel and Defendants' Counsel shall jointly apply to the Court for entry of a Preliminary Approval Order substantially in the form annexed hereto as Exhibit A. The Preliminary Approval Order shall contain, among other provisions, a preliminary injunction against litigation of claims by, on behalf of, or as representative of any Class Members who have not opted out of the Settlement (including individual claims, intervention claims, and class actions).

  B. Plaintiffs and Defendants stipulate to the certification of the Class and certification of Lead Plaintiff as representative of the Class solely for the purpose of this proposed Settlement. If the proposed Settlement is not approved by the Court or is not consummated for any other reason, Defendants reserve the right to oppose certification of the Class, or any other class, and to oppose certification or appointment of Lead Plaintiff as representative of and Lead Counsel as counsel for the Class, or any other class, in the Action.

## XI.    FINAL APPROVAL AND FINAL JUDGMENT

A.     If the Court approves the Settlement contemplated by this Settlement

Agreement, Lead Counsel and Defendants' Counsel shall jointly request that the Court

enter a Final Order and a Judgment substantially in the forms annexed hereto as

Exhibit B and C.  The Final Order and the Judgment shall include, among other

provisions, a permanent injunction enjoining Class Members, and anyone purporting to

represent or to pursue claims on behalf of, for the benefit of, or derivatively for any Class

Members, from commencing, prosecuting, intervening in, or participating in any claims

or causes of action relating to the Action or the Released Plaintiffs' Claims.

B.     The Settling Parties shall request that the Court enter a PSLRA

Contribution Bar Order as follows:  To the extent authorized by § 11 of the Securities

Act, and in accordance with 15 U.S.C. § 78u-4(f)(7)(A), any and all Claims for

contribution arising out of any Released Plaintiffs' Claim (*i*) by any person or entity

against any of the Releasees and (*ii*) by any of the Releasees against any person or entity

other than as set out in 15 U.S.C. § 78u-4(f)(7)(A)(ii) are hereby permanently barred,

extinguished, discharged, satisfied, and unenforceable.  Accordingly, without limitation

to any of the above, (*i*) any person or entity is hereby permanently enjoined from

commencing, prosecuting, or asserting against any of the Releasees any such Claim for

contribution, and (*ii*) the Releasees are hereby permanently enjoined from commencing,

prosecuting, or asserting against any person or entity any such Claim for contribution.  In

accordance with 15 U.S.C. § 78u-4(f)(7)(B), any final verdict or judgment that might be

obtained by or on behalf of the Class or a Class Member against any person or entity for

loss for which such person or entity and any Releasees are found to be jointly liable shall

39

be reduced by the greater of (*i*) an amount that corresponds to Defendants' percentage of responsibility for the loss to the Class or Class Member or (*ii*) either (a) the Settlement Amount, in the case of the Class, or (b) that portion of the Settlement Amount applicable to the Class Member, in the case of a Class Member, unless the court entering such judgment orders otherwise.

        C.     The Settling Parties shall also request that the Court enter a Complete Bar Order at the time the Court approves the Settlement Agreement.  The Complete Bar Order shall provide as follows:

        1.     Any and all persons and entities are permanently barred, enjoined, and restrained from commencing, prosecuting, or asserting any Claim against any Releasee arising under any federal, state, or foreign statutory or common-law rule, however styled, whether for indemnification or contribution or otherwise denominated, including Claims for breach of contract or for misrepresentation, where the Claim is or arises from a Released Plaintiffs' Claim and the alleged injury to such person or entity arises from that person's or entity's alleged liability to the Class or any Class Member, including any Claim in which a person or entity seeks to recover from any of the Releasees (*i*) any amounts such person or entity has or might become liable to pay to the Class or any Class Member and/or (*ii*) any costs, expenses, or attorneys' fees from defending any Claim by the Class or any Class Member.  All such Claims are hereby extinguished, discharged, satisfied, and unenforceable, subject to a hearing to be held by the Court, if necessary.  The provisions of this Subsection XI.C are intended to preclude any liability of any of the Releasees to any person or entity for indemnification, contribution, or otherwise on any Claim that is or arises from a Released Plaintiffs' Claim and where the alleged injury to such person or entity arises from that person's or entity's alleged liability to the Class or any Class

Member; *provided, however,* that if the Class or any Class Member obtains any judgment against any such person or entity based upon, arising out of, or relating to any Released Plaintiffs' Claim for which such person or entity and any of the Releasees are found to be jointly liable, that person or entity shall be entitled to a judgment credit equal to an amount that is the greater of (*i*) an amount that corresponds to such Releasee's or Releasees' percentage of responsibility for the loss to the Class or Class Member or (*ii*) either (a) the Settlement Amount, in the case of the Class, or (b) that portion of the Settlement Amount applicable to the Class Member, in the case of a Class Member, unless the court entering such judgment orders otherwise.

2. Each and every Releasee is permanently barred, enjoined, and restrained from commencing, prosecuting, or asserting any Claim against any other person or entity (including any other Releasee) arising under any federal, state, or foreign statutory or common-law rule, however styled, whether for indemnification or contribution or otherwise denominated, including Claims for breach of contract and for misrepresentation, where the Claim is or arises from a Released Plaintiffs' Claim and the alleged injury to such Releasee arises from that Releasee's alleged liability to the Class or any Class Member, including any Claim in which any Releasee seeks to recover from any person or entity (including another Releasee) (*i*) any amounts any such Releasee has or might become liable to pay to the Class or any Class Member and/or (*ii*) any costs, expenses, or attorneys' fees from defending any Claim by the Class or any Class Member. All such Claims are hereby extinguished, discharged, satisfied and unenforceable.

3. Notwithstanding anything stated in the Complete Bar Order, if any person or entity (for purposes of this Subsection XI.C.3, a "petitioner") commences against any of the Releasees any action either (*i*) asserting a Claim that is or arises from a Released Plaintiffs' Claim and where the alleged injury to such petitioner arises from that petitioner's alleged

41

liability to the Class or any Class Member or (*ii*) seeking contribution or indemnity for any liability or expenses incurred in connection with any such Claim, and if such action or Claim is not barred by a court pursuant to this Subsection XI.C. or is otherwise not barred by the Complete Bar Order, neither the Complete Bar Order nor the Settlement Agreement shall bar Claims by that Releasee against (*a*) such petitioner, (*b*) any person or entity who is or was controlled by, controlling, or under common control with the petitioner, whose assets or estate are or were controlled, represented, or administered by the petitioner, or as to whose Claims the petitioner has succeeded, and (*c*) any person or entity that participated with any of the preceding persons or entities described in items (*a*) and (*b*) of this Subsection XI.C.3 in connection with the assertion of the Claim brought against the Releasee(s); *provided, however,* that nothing in the Complete Bar Order or Settlement Agreement shall prevent the Settling Parties from taking such steps as are necessary to enforce the terms of the Settlement Agreement.

4.   Lead Plaintiff will use reasonable efforts, in settling any Claim with any other person or entity, to obtain from such person or entity a release of any and all Claims based upon, arising out of, or relating to the Action or any of the Released Plaintiffs' Claims that the person or entity might have against any of the Releasees.

5.   If any term of the Complete Bar Order entered by the Court is held to be unenforceable after the date of entry, such provision shall be substituted with such other provision as may be necessary to afford all of the Releasees the fullest protection permitted by law from any Claim that is based upon, arises out of, or relates to any Released Plaintiffs' Claim.

6.   Notwithstanding the Complete Bar Order or anything else in the Settlement Agreement, nothing shall release, interfere with, limit, or bar the assertion by any

42

Releasee of any Claim for insurance coverage under any insurance, reinsurance, or indemnity policy that provides coverage respecting the conduct at issue in the Action.

      D.      The Judgment will contain a statement that, during the course of the Action, the Settling Parties and their respective counsel at all times complied with the requirements of Rule 11 of the Federal Rules of Civil Procedure.

## XII.    MODIFICATION OR TERMINATION OF THIS SETTLEMENT AGREEMENT

      A.      The terms and provisions of this Settlement Agreement may not be altered or modified except pursuant to Subsection XV.I; *provided, however*, that, after entry of the Final Order and the Judgment, Lead Counsel, on behalf of Lead Plaintiff and the Class, and Defendants' Counsel, on behalf of Defendants, may by written agreement effect any amendments, modifications, or expansions of this Settlement Agreement and its implementing documents (including all exhibits to this Settlement Agreement) without notice to or approval by the Court if such changes are not materially inconsistent with the Court's Final Order and Judgment and do not materially limit the rights of Class Members under this Settlement Agreement.

      B.      Subject to Sections XIII through XV below, this Settlement Agreement will terminate at the sole option and discretion of Defendants' Counsel (on behalf of Defendants) and/or Lead Counsel (on behalf of Lead Plaintiff and the Class) if (*i*) the Court, or any appellate court(s), rejects, modifies, or denies approval of any portion of this Settlement Agreement or the proposed Settlement that the terminating Settling Party reasonably and in good faith determines is material, including the terms of relief, the findings of the Court, the provisions relating to notice, the definition of the Class, the Complete Bar Order, the permanent injunction, and/or the terms of the Release, or (*ii*) the

Court, or any appellate court(s), does not enter or completely affirm, or alters or expands, any portion of the Preliminary Approval Order, the Final Order, or the Judgment that the terminating Settling Party reasonably and in good faith believes is material.  If the Settling Parties disagree about whether a change is material, they will submit the dispute to the Mediator for a final and binding decision.  In any of the above circumstances, the terminating Settling Party must exercise the option to withdraw from and terminate this Settlement Agreement, as provided in this Section XII, no later than thirty (30) days after receiving actual notice of the event prompting the termination.

      C.      Notwithstanding the preceding Subsection XII.B, neither Lead Plaintiff nor Lead Counsel may terminate this Settlement Agreement on the basis of the Attorneys' Fees and Expenses Award ordered by the Court, or as modified by any appellate court(s).

## XIII.  DEFENDANTS' TERMINATION RIGHTS

      A.      Without limiting any other rights under this Settlement Agreement, by no later than two (2) days before the Fairness Hearing, Defendants may unilaterally withdraw from and terminate this Settlement Agreement if requests for exclusion are received from potential Class Members in accordance with the terms of the Supplemental Agreement.

XIV.  **LEAD PLAINTIFFS' TERMINATION RIGHTS**

A.      In addition to having the right to terminate this Settlement Agreement as provided in Subsection II.A and Section XII above, Lead Plaintiff may terminate this Settlement Agreement if, within 10 days following the completion of confirmatory discovery, Lead Plaintiff and Lead Counsel reasonably and in good faith believe that the proposed Settlement set forth in this Agreement is not fair, reasonable, and adequate.

XV.  **GENERAL MATTERS AND RESERVATIONS**

A.      If an option to withdraw from and terminate this Settlement Agreement arises under this Settlement Agreement, (*i*) neither Defendants nor Plaintiffs will be required for any reason or under any circumstance to exercise that option, and (*ii*) if Defendants or Lead Plaintiff exercise the option to withdraw from or terminate the Settlement, they shall exercise that option in good faith.

B.      If this Settlement Agreement does not become Final or is otherwise terminated pursuant to the terms hereof, or if the releases contemplated in Section VIII.A do not become effective, or if the Settlement is terminated de facto and does not become Final by operation of law, then:

1.      This Settlement Agreement shall be null and void and shall have no force or effect, and no party to this Settlement Agreement shall be bound by any of its terms, except for the terms set out in this Section XV;

2.      This Settlement Agreement, all of its provisions, and all negotiations, statements, and proceedings relating to it shall be without prejudice to the rights of Defendants, Plaintiffs, or any other Class Member, all of whom shall be restored to their respective positions existing immediately before the execution of this Settlement Agreement, except with respect to:

a.      the payment from the Settlement Amount of such Notice and Administrative Expenses and Tax Expenses as have been actually expended or incurred, regardless of amount, as described in Section II above, and

b.      the use of information obtained in confirmatory discovery, as described in Section I.C.3 above and in the Confidentiality Order (Exhibit G).

3.      Releasees and their current and former predecessors, successors, heirs, Affiliates, agents, attorneys, representatives, and assigns expressly and affirmatively reserve all defenses, arguments, and motions as to all Claims that have been or might later be asserted in the Action, including any argument that the Action may not be litigated as a class action;

4.      Plaintiffs and their current and former predecessors, successors, heirs, Affiliates, agents, attorneys, representatives, and assigns expressly and affirmatively reserve all motions as to, and arguments in support of, all Claims that have been or might later be asserted in the Action, including any argument concerning class certification;

5.      Neither this Settlement Agreement nor the fact of its having been made shall be admissible or entered into evidence for any purpose whatsoever, with the exception of Subsection II.C and Sections XII, XIII, XIV, and XV;

6.      Within five (5) calendar days after receiving notice of termination, the Escrow Agent shall return to the source or payor of the Settlement Amount all funds remaining in the Escrow Account (after subtraction of amounts needed to pay incurred but as yet unpaid expenses); and

7.      Except as specifically provided herein, nothing in this Settlement Agreement shall create any obligation on the part of any Settling Party to pay any other Settling Party's fees or expenses.

46

C.    Except as provided in this Section XV, or as may otherwise be required by law:

1.    The Settling Parties and their counsel agree to keep the contents of this Settlement Agreement and all related negotiations confidential until the motion for preliminary approval is filed with the Court and, as to any initial press release announcing the settlement described in this Settlement Agreement, to attempt in good faith to coordinate the timing of such press release; *provided, however*, that this Section XV shall not prevent earlier disclosure of such information by the Settling Parties or their counsel to any person or entity (such as clients, experts, courts, regulatory entities, insurers, reinsurers, and/or administrators) to whom the Settling Parties agree disclosure must be made to effectuate the terms and conditions of this Settlement Agreement.

2.    Plaintiffs and Roka each shall have the opportunity to review and comment on the other's press release (if any) before it is issued, and Roka shall have the right to review and approve Plaintiffs' press release (if any).  Any press release issued by Plaintiffs, Lead Counsel, or Defendants must be consistent with the terms of this Settlement Agreement.

3.    Notwithstanding any other provision of this Section XV, Defendants shall be entitled to make, without prior review or approval by Lead Counsel, any and all disclosures regarding this Settlement Agreement that it believes might be required or appropriate to its insurers, reinsurers, regulators, stock exchanges (including the NASDAQ), the Securities and Exchange Commission, the Department of the Treasury, any other regulatory body (including any Committee of the United States Congress), and/or the Releasees' former or current independent auditors, accountants, attorneys, financial institutions, or lenders when disclosure to such individuals or entities is required in the normal course of the Releasees' business; *provided, however*, that (*i*) any and all such disclosures or statements shall be balanced, fair, and accurate,

47

and Defendants shall refrain from asserting that any Claim asserted in the Action was brought in

bad faith, and (*ii*) Lead Counsel will be given advance notice, to the extent possible, of any such

disclosures and their general substance.

4.    The Settling Parties further agree that Defendants' participation in this

proposed Settlement shall be set forth in the most positive light.

D.    All of the exhibits attached to this Settlement Agreement are incorporated by

reference as though fully set forth herein.

E.    The Settling Parties intend that the Settlement Agreement shall be a final and

complete resolution of all disputes that were, could have been, or could be asserted as to the

Released Plaintiffs' Claims and the Released Defendants' Claims.   Accordingly, the Settling

Parties agree not to assert in any forum that any conduct of Plaintiffs and/or Defendants, or any

of them, in connection with this Action, the settlement of this Action, or any of the Released

Plaintiffs' Claims or Released Defendants' Claims was in bad faith or was unreasonable.   No

Settling Party shall assert any Claim that any other Settling Party violated Rule 11 of the Federal

Rules of Civil Procedure relating to the prosecution, defense, or settlement of the Action.

F.    The Settling Parties agree that the amount paid and the other terms of the

Settlement Agreement were negotiated at arm's length in good faith by the Settling Parties and

reflect an agreement that was reached voluntarily, after consultation with experienced legal

counsel and under the auspices of the Mediator.

G.    Each Settling Party's counsel signing this Settlement Agreement represents that

he or she is authorized to enter into this Settlement Agreement on behalf of his or her clients.

H.    Lead Plaintiff, through Lead Counsel, represents that he (*i*) has agreed to serve as

a representative of the Class proposed to be certified herein, (*ii*) has consulted with Lead Counsel

48

about the Action, this Settlement Agreement, and the obligations of a representative of the Class, and (*iii*) will remain in and not request exclusion from the Class and will serve as a representative of the Class until the terms of this Settlement Agreement are effectuated, this Settlement Agreement is terminated in accordance with its terms, or the Court at any time determines that Lead Plaintiff cannot represent the Class.

I.      This Settlement Agreement (including the Supplemental Agreement and the Confidentiality Order) sets forth the entire agreement among the Settling Parties as to its subject matter and may not be altered or modified except by a written instrument executed by all Settling Parties' counsel.  Plaintiffs and Defendants expressly acknowledge that there are no agreements, arrangements, or understandings among or between them concerning the subject matter of this Settlement Agreement other than those expressed or referred to in this Settlement Agreement.  In entering into this Settlement Agreement, no Settling Party has relied upon any representation or warranty not set forth expressly herein.

J.      This Settlement Agreement shall be governed by and interpreted according to the laws of the State of New Jersey, excluding its conflict-of-laws provisions.

K.      Any action arising under or to enforce this Settlement Agreement shall be commenced and maintained only in the Court, which shall retain continuing, exclusive jurisdiction over all matters relating to the Settlement.

L.      Whenever this Settlement Agreement requires or contemplates that a Settling Party shall or may give notice to the other, notice shall be provided by facsimile, e-mail, and/or next-day (excluding Saturday, Sunday, and legal holidays) express-delivery service as follows and shall be deemed effective upon such facsimile or e-mail transmission or delivery to the facsimile number, e-mail address, or street address, as the case may be, below:

1.    If to Defendants, then to:

        Ralph C. Ferrara
        rferrara@proskauer.com
        Proskauer Rose LLP
        1001 Pennsylvania Avenue, N.W.
        Suite 600 South
        Washington, D.C.  20004
        Telephone:  (202) 416-5820
        Facsimile:  (202) 416-6899

        Jonathan E. Richman
        jerichman@proskauer.com
        Proskauer Rose LLP
        Eleven Times Square
        New York, NY  10036-8299
        Telephone:  (212) 969-3448
        Facsimile:  (212) 969-2900

2.    If to Lead Plaintiff, then to:

        Laurence Rosen
        lrosen@rosenlegal.com
        Jonathan Horne
        jhorne@rosenlegal.com
        The Rosen Law Firm, P.A.
        275 Madison Avenue, 34th Floor
        New York, NY  10016
        Telephone:  (212) 686-1060
        Facsimile:  (202) 3827

M.    All time periods set forth herein shall be computed in calendar days unless otherwise expressly provided.  In computing any period of time prescribed or allowed by this Settlement Agreement or by order of court, the day of the act, event, or default from which the designated period of time begins to run shall not be included.  The last day of the period so computed shall be included, unless it is a Saturday, a Sunday, or a legal holiday, or, when the act to be done is the filing of a paper in Court, a day on which weather or other conditions have made the office of the Clerk of Court inaccessible, in which event the period shall run until the end of the next day that is not one of the aforementioned days.  As used in this Subsection, "legal

holiday" includes New Year's Day, the observance of the Birthday of Martin Luther King, Jr.,

Presidents' Day, Memorial Day, Independence Day, Labor Day, Columbus Day, Veterans Day,

Thanksgiving Day, Christmas Day, and any other day appointed as a federal or New Jersey state

holiday.

     N.    The Settling Parties reserve the right, subject to the Court's approval, to make any

reasonable extensions of time that might be necessary to carry out any of the provisions of this

Settlement Agreement.

     O.    All Settling Parties agree that this Settlement Agreement was drafted by counsel

for the Settling Parties at arm's length and that no parol or other evidence may be offered to

explain, construe, contradict, or clarify its terms, the intent of the Settling Parties or their

counsel, or the circumstances under which this Settlement Agreement was made or executed.

Nor shall there be any presumption for or against any Settling Party that drafted all or any

portion of this Settlement Agreement.

     P.    This Settlement Agreement, offer of this Settlement Agreement, and compliance

with this Settlement Agreement shall not constitute or be construed as an admission by any of the

Releasees of any wrongdoing or liability. This Settlement Agreement is to be construed solely as

a reflection of the Settling Parties' desire to facilitate a resolution of the Claims in the Complaint

and of the Released Plaintiffs' Claims. In no event shall this Settlement Agreement, any of its

provisions, or any negotiations, statements, or court proceedings relating to its provisions in any

way be construed as, offered as, received as, used as, or deemed to be evidence of any kind in the

Action, any other action, or any judicial, administrative, regulatory, or other proceeding, except a

proceeding to enforce this Settlement Agreement. Without limiting the foregoing, neither this

Settlement Agreement nor any related negotiations, statements, or court proceedings shall be

construed as, offered as, received as, used as, or deemed to be evidence or an admission or concession of any liability or wrongdoing whatsoever on the part of any person or entity, including Defendants, or as a waiver by Defendants of any applicable defense.

Q.      No opinion or advice concerning the tax consequences of the proposed Settlement to individual Class Members or any of the Settling Parties is being given or will be given by Defendants' Counsel and/or Lead Counsel; nor is any representation or warranty in this regard made by virtue of this Settlement Agreement.  Class Members will be directed to consult their own tax advisors regarding the tax consequences of the proposed Settlement and any tax reporting obligations they might have with respect to it.  Each Class Member's tax obligations, and the determination thereof, are the sole responsibility of the Class Member, and it is understood that the tax consequences may vary depending on the particular circumstances of each individual Class Member.

R.      The Settling Parties, their successors and assigns, and their attorneys undertake to implement the terms of this Settlement Agreement in good faith and to use good faith in resolving any disputes that might arise in the implementation of the terms of this Settlement Agreement.

S.      The Settling Parties, their successors and assigns, and their attorneys agree to cooperate fully with one another in seeking Court approval of this Settlement Agreement and to use all reasonable efforts to effect the prompt consummation of this Settlement Agreement and the proposed Settlement.

T.      This Settlement Agreement may be signed in counterparts, each of which shall constitute a duplicate original.  Execution by facsimile or e-mail in pdf format shall be fully and legally binding on a Settling Party.

U.      All Releasees who are not Settling Parties are intended third-party beneficiaries who are entitled as of the Final Settlement Date to enforce the terms of the Release set forth in this Settlement Agreement.

Agreed to as of this 17th day of May, 2016.

_____
Laurence Rosen
Jonathan Horne
The Rosen Law Firm, P.A.
275 Madison Avenue, 34th Floor
New York, NY  10016
Telephone:  (212) 686-1060
Facsimile:  (212) 202-3827

ON BEHALF OF PLAINTIFFS, THE
CLASS, AND LEAD COUNSEL

_____
Ralph C. Ferrara
Jonathan E. Richman
Proskauer Rose LLP
1001 Pennsylvania Ave., N.W.
Suite 600 South
Washington, D.C.  20004
Telephone:  (202) 416-5820
Facsimile:  (202) 416-6899

ON BEHALF OF DEFENDANTS

53440976

53

# TABLE OF CONTENTS

**Page**

I.    DEFINITIONS AND CONFIRMATORY DISCOVERY ........................................5

    A.    Definitions ............................................................................................5

    B.    Capitalized Terms ..............................................................................20

    C.    Confirmatory Discovery ....................................................................20

II.   TERMS AND CONDITIONS OF THE SETTLEMENT .................................21

    A.    Payment of Settlement Amount..........................................................21

    B.    Escrow Agent ....................................................................................22

    C.    Qualified Settlement Fund..................................................................23

    D.    Distribution of the Net Settlement Amount.........................................24

    E.    Plan of Allocation ..............................................................................26

III.  NOTICE TO THE CLASS ..............................................................................28

    A.    Individual Notice ...............................................................................28

    B.    Summary Notice ................................................................................28

    C.    Notice Costs.......................................................................................29

IV.   APPOINTMENT OF CLAIMS ADMINISTRATOR.........................................29

V.    RIGHT TO COMMUNICATE WITH CLASS MEMBERS ..............................30

VI.   REQUESTS FOR EXCLUSION.....................................................................31

VII.  OBJECTIONS TO SETTLEMENT .................................................................32

VIII. RELEASE AND WAIVER, AND ORDER OF DISMISSAL..............................34

    A.    Release and Waiver ...........................................................................34

    B.    Final Judgment and Order of Dismissal .............................................36

i

IX. ATTORNEYS' FEES AND EXPENSES ..............................................37

X. PRELIMINARY APPROVAL HEARING AND PRELIMINARY
APPROVAL ORDER..............................................................................38

XI. FINAL APPROVAL AND FINAL JUDGMENT ..................................39

XII. MODIFICATION OR TERMINATION OF THIS SETTLEMENT
AGREEMENT........................................................................................43

XIII. DEFENDANTS' TERMINATION RIGHTS ........................................44

XIV. LEAD PLAINTIFFS' TERMINATION RIGHTS ................................45

XV. GENERAL MATTERS AND RESERVATIONS ................................45

**EXHIBITS**

Exhibit A:     Preliminary Approval Order

Exhibit B:     Final Order

Exhibit C:     Judgment

Exhibit D:     Individual Notice

Exhibit E:     Claim Form

Exhibit F:     Summary Notice

Exhibit G:     Confidentiality Agreement and Order

i