UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

―――――――――――――――――――――――x
                                        :
**STANLEY YEDLOWSKI**, *et al.*,        :    Case No. 14-CV-8020-FLW-TJB
                                        :
        **Plaintiffs,**                 :
v.                                      :
                                        :
**ROKA BIOSCIENCE, INC.**, *et al.*,    :
                                        :
        **Defendants**                  :
―――――――――――――――――――――――x

**DECLARATION OF LAURENCE M. ROSEN IN SUPPORT OF MOTIONS FOR FINAL APPROVAL OF SETTLEMENT AND PLAN OF ALLOCATION**

1

Laurence Rosen, pursuant to 28 U.S.C. § 1746, declares:

1. I am the managing attorney of the Rosen Law Firm, P.A., Court-appointed Lead Counsel in this Litigation. I submit this declaration in support of the Motion for Final Approval of Class Action Settlement and Plan of Allocation (the "Final Approval Motion") of Lead Plaintiff Stanley Yedlowski. I make this Declaration solely to place relevant facts into the record and refer the Court to the fuller factual statement contained in the Final Approval Motion and the Motion for Award of Attorneys' Fees and Reimbursement of Expenses, and Awards to Lead Plaintiffs (the "Fee Motion"), filed herewith.

  I. The Settlement

2. Defendants held three applicable insurance policies, each with a face amount of $5.0 million. These were wasting policies, meaning that they deplete as they pay Defendants' attorneys' fees.

3. Settlement negotiations were vigorous and at arm's length.

4. Plaintiff proposes to settle this Action for a cash payment of $3.275 million. The Settlement would completely dispose of this Action.

5. Before reaching the Settlement, Plaintiff:
   a. Had hours of discussions with former Roka employees;
   b. Consulted with damages and scientific experts;
   c. Reviewed Defendants' mediation brief, which contained non-public information about the *Listeria* false positives problem.

  II. Post-Settlement Discovery

6. The Settlement entitled Plaintiff to discovery targeted to ascertaining whether the Settlement was fair, reasonable, and adequate ("Post-Settlement Discovery").

7. Defendants produced 8,000 documents; Plaintiff reviewed them all. Plaintiff also conducted in-depth interviews of three of the former employees of Roka Bioscience, Inc. ("Roka"), including Defendant Steven Sobieski, Roka's Class Period CFO. Plaintiff ultimately elected not to terminate the Settlement.

8. The interviews are protected by confidentiality. But, in general terms, the interviewees were obviously well prepared to discuss the facts about the Listeria false positives problem in detail. The interviewees extensively discussed specific internal communications, reports, and board presentations from the Post-Settlement Discovery. The interviewees provided a reasonably consistent narrative of Roka's experience with and attempts to resolve the *Listeria* false positives problem beginning in Spring 2014, through the roll-out of the new workflow, through the IPO and the stall of Roka's recruitment efforts. Plaintiff was able to definitively identify the Roka customers who were affected ny the Listeria false positives problem, Roka's efforts to remedy the false positives problem, and the success and failure of those efforts. Plaintiff also learned how ground-level findings were communicated up Roka's of command.

9. The Post-Settlement Discovery unearthed specific facts which factored into Plaintiff's decision not to terminate the Settlement:

   a. It is true that Roka lost Hillshire Farm as an indirect customer (through a contract lab). But notwithstanding any pre-IPO Hillshire *Listeria* false positive issues, Hillshire did not abandon Roka's tests until after the IPO.

   b. It appears that Roka did lose customers before the IPO because of the Listeria false positives problem as Plaintiff alleges. But all but one of these were customers who had simply accepted Instruments for evaluation, while the existing customer was not a key Roka customer.

  c. It appears that many customers, though not all, did successfully adopt the new workflow.

  d. It appears that Roka had not lost multiple large customers before the November 6, 2014 call as a result of the *Listeria* false positives problem. Rather, it appears that Roka's disclosure that it would be producing and selling a new Listeria test caused Roka existing customers to reduce their use of Roka's existing *Listeria* test, while hindering Roka's efforts to secure new customers.

 III. Alternatives to Settlement

 10. If the case had not settled, and Plaintiff survived Defendants' Motion to Dismiss, Plaintiff would have sought documents concerning the Listeria false positives problem, disclosures in the IPO Registration Statement, and scientific materials and test results, from at least: (a) Roka's internal correspondence, memoranda, reports, and other internal documents; (b) Roka's correspondence with the IPO underwriters; (c) Roka's correspondence with its customers. In Lead Counsel's experience, cases of this nature and magnitude involve hundreds of thousands of documents.

 11. In discovery, Plaintiff would also seek to take depositions of the current and former employees of Roka, Roka's customers, and the IPO underwriters. Based on Plaintiff's investigation, these deponents are scattered throughout the country, including in Ohio and California, among other places. Plaintiff has already identified several potential witnesses who reside in various parts of California; several who reside in Ohio; several who reside in New Jersey and New York; and several who reside in Pennsylvania.

 12. To date, Lead Plaintiff has received on request for exclusion. The Roka investor who sought exclusion has no recognized loss because he bought his shares in December 2014 for

more than the post-disclosure price. See Notice Of: (1) Pendency And Proposed Settlement Of Class Action And (2) Hearing On Proposed Settlement, dkt. # 45-4, at 12 [PACER PAGINATION].

IV.  Plan of allocation

13. The Plan of Allocation was formulated in consultation with a damages consultant, and incorporates negative causation principles.

14. In Lead Counsel's experience, there are fraudulent claims in most, if not every, settlement. Often, these claims, if approved, would have recognized losses of millions of dollars.

V.  Exhibits

15. Attached to this Declaration are true and correct copies of:

Exhibit 1:   Declaration of Josephine Bravata Concerning Provision of Notice of Proposed Settlement of Class Action

Exhibit 2:   Declaration of Laurence M. Rosen Concerning Fees and Expenses

Exhibit 3:   Declaration Of Stanley Yedlowski In Support Of Final Approval Of Settlement, Award To Lead Plaintiff, And Request For Award Of Attorneys' Fees

Exhibit 4:   Exclusion request of Mark G. Larman

Exhibit 5:   Laarni T. Bulan, et al, Securities Class Action Settlements: 2015 Review and Analysis, available at <https://goo.gl/Xj7sZv>

Exhibit 6:   Cornerstone Research, Securities Class Action Filings: 2015 Year in Review, available at <https://goo.gl/ieT0Ly>.

Exhibit 7: Declaration of Hon. Faith S. Hochberg (Ret.) In Support of Proposed Settlement.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: October 5, 2016 /s/ Laurence M. Rosen

**CERTIFICATE OF SERVICE**

      I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on October 5, 2016.

Dated:  October 5, 2016                                                               /s/ Laurence Rosen